RENAISSANCE MANAGEMENT COMPANY, INC. *v.*
COMMISSIONER OF REVENUE SERVICES
(SC 16984)

Sullivan, C. J., and Borden, Katz, Palmer and Zarella, Js.

Argued October 23—officially released December 30, 2003

*Robert J. Percy*, for the appellant (plaintiff).

*Philip Miller*, assistant attorney general, with whom were *Louis P. Bucari, Jr.*, and, on the brief, *Richard Blumenthal*, attorney general, and *Jonathon L. Ensign*, assistant attorney general, for the appellee (defendant).

*Opinion*

PER CURIAM. The plaintiff, Renaissance Management Company, Inc., appeals,[1] pursuant to General Stat-

---

[1] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

utes § 12-422,[2] from the judgment of the trial court, which dismissed its appeal from the determination by the defendant, the commissioner of revenue services, that during the audit period of October 1, 1993, through September 30, 1996, the plaintiff was not exempt from sales and use taxes on gross receipts derived from the furnishing of property management services. The plaintiff claims that the trial court improperly determined that it had failed to satisfy its burden of proving that the exemption described in General Statutes (Rev. to 1993) § 12-407 (8)[3]

[2] General Statutes § 12-422 provides: "Any taxpayer aggrieved because of any order, decision, determination or disallowance of the Commissioner of Revenue Services under section 12-418, 12-421 or 12-425 may, within one month after service upon the taxpayer of notice of such order, decision, determination or disallowance, take an appeal therefrom to the superior court for the judicial district of New Britain, which shall be accompanied by a citation to the Commissioner of Revenue Services to appear before said court. Such citation shall be signed by the same authority, and such appeal shall be returnable at the same time and served and returned in the same manner, as is required in case of a summons in a civil action. The authority issuing the citation shall take from the appellant a bond or recognizance to the state of Connecticut, with surety to prosecute the appeal to effect and to comply with the orders and decrees of the court in the premises. Such appeals shall be preferred cases, to be heard, unless cause appears to the contrary, at the first session, by the court or by a committee appointed by it. Said court may grant such relief as may be equitable and, if such tax has been paid prior to the granting of such relief, may order the Treasurer to pay the amount of such relief, with interest at the rate of two-thirds of one per cent per month or fraction thereof, to the aggrieved taxpayer. If the appeal has been taken without probable cause, the court may tax double or triple costs, as the case demands; and, upon all such appeals which are denied, costs may be taxed against the appellant at the discretion of the court, but no costs shall be taxed against the state."

[3] General Statutes (Rev. to 1993) § 12-407 (8) provides in relevant part: " 'Sales price' means the total amount for which tangible personal property is sold, the total amount of rent received for occupancy or the total amount received for any service rendered on or after July 1, 1975, or the total amount of payment or periodic payments received for leasing or rental of tangible personal property for the term of any such lease or rental occurring on or after July 1, 1975, valued in money, whether paid in money or otherwise, without any deduction on account of any of the following: (a) The cost of the property sold; (b) the cost of materials used, labor or service cost, interest charged, losses or any other expenses; (c) the cost of transportation

and (9)[4] includes the separately stated expenses of

of the property prior to its purchase. Such total amounts include all of the following: (a) Any services that are a part of the sale; (b) any amount for which credit is given to the purchaser by the seller; (c) all compensation and all employment related expenses, whether or not separately stated, paid to or on behalf of employees of a retailer of any service described in subdivision (i) of subsection (2) of this section. 'Sales price' does not include any of the following . . . (f) the amount charged for separately stated compensation, fringe benefits, workers' compensation and payroll taxes or assessments paid to or on behalf of employees of a retailer who has contracted to manage a service recipient's property or business premises and renders management services described in subdivision (i) of subsection (2) of this section, provided (A) the employees perform such services solely for the service recipient at its property or business premises and (B) 'sales price' shall include the separately stated compensation, fringe benefits, workers' compensation and payroll taxes or assessments paid to or on behalf of any employee of the retailer who is an officer, director or owner of more than five per cent of the outstanding capital stock of the retailer. Determination whether an employee performs services solely for a service recipient at its property or business premises for purposes of this subdivision shall be made by reference to such employee's activities during the time period beginning on the later of the commencement of the management contract, the date of the employee's first employment by the retailer or the date which is six months immediately preceding the date of such determination."

General Statutes (Rev. to 1993) § 12-407 (2) provides in relevant part: " 'Sale' and 'Selling' mean and include . . . (i) the rendering of certain services for a consideration . . . as follows . . . (I) services to industrial, commercial or income-producing real property, including but not limited to, such services as management . . . provided income-producing property shall not include property used exclusively for residential purposes in which the owner resides and which contains no more than three dwelling units, or a housing facility for low and moderate income families and persons owned by an organization which has as one of its purposes the ownership of housing for low and moderate income families, and which organization has been granted exemption from federal income taxation . . . ."

[4] General Statutes (Rev. to 1993) § 12-407 (9) provides in relevant part: " 'Gross receipts' means the total amount of the sales price, of the retail sales of retailers, or the total amount of the rent received for occupancy or the total amount received for any service rendered on or after July 1, 1975, or the total amount of payment or periodic payments received for leasing or rental of tangible personal property for the term of any such lease or rental occurring on or after July 1, 1975, valued in money, whether received in money or otherwise, without any deduction on account of any of the following: (a) The cost of the property sold; however, in accordance with such regulations as the commissioner of revenue services may pre-

employees who are not located at, and who do not solely devote their time to, a single housing project.

Our examination of the record and briefs and our consideration of the arguments of the parties persuade us that the judgment of the trial court should be affirmed. The issues were resolved properly in the trial court's concise and well reasoned memorandum of decision. *Renaissance Management Co.* v. *Commissioner of Revenue Services*, 48 Conn. Sup. 221, 838 A.2d

scribe, a deduction may be taken if the retailer has purchased property for some other purpose than resale, has reimbursed his vendor for tax which the vendor is required to pay to the state or has paid the use tax with respect to the property, and has resold the property prior to making any use of the property other than retention, demonstration or display while holding it for sale in the regular course of business. If such a deduction is taken by the retailer, no refund or credit will be allowed to his vendor with respect to the sale of the property; (b) the cost of the materials used, labor or service cost, interest paid, losses or any other expense; (c) the cost of transportation of the property prior to its sale to the purchaser. The total amount of the sales price includes all of the following: (a) Any services that are a part of the sale; (b) all receipts, cash, credits and property of any kind; (c) any amount for which credit is allowed by the seller to the purchaser; (d) all compensation and all employment related expenses, whether or not separately stated, paid to or on behalf of employees of a retailer of any service described in subdivision (i) of subsection (2) of this section. 'Gross receipts' do not include any of the following . . . (f) the amount charged for separately stated compensation, fringe benefits, workers' compensation and payroll taxes or assessments paid to or on behalf of employees of a retailer who has contracted to manage a service recipient's property or business premises and renders management services described in subdivision (i) of subsection (2) of this section, provided (A) the employees perform such services solely for the service recipient at its property or business premises and (B) 'gross receipts' shall include the separately stated compensation, fringe benefits, workers' compensation and payroll taxes or assessments paid to or on behalf of any employee of the retailer who is an officer, director or owner of more than five per cent of the outstanding capital stock of the retailer. Determination whether an employee performs services solely for a service recipient at its property or business premises for purposes of this subdivision shall be made by reference to such employee's activities during the time period beginning on the later of the commencement of the management contract, the date of the employee's first employment by the retailer or the date which is six months immediately preceding the date of such determination."

260 (2002). Because that memorandum of decision fully addresses all arguments raised in this appeal, we adopt it as a proper statement of the issues and the applicable law concerning those issues. It would serve no useful purpose for us to repeat the discussion contained therein. See *Davis* v. *Freedom of Information Commission*, 259 Conn. 45, 55–56, 787 A.2d 530 (2002).

The judgment is affirmed.