## GABRIANA MILLER ET AL. *v.* STEPHEN FISHMAN ET AL.
### (AC 26884)

Schaller, Rogers and West, Js.

Argued January 5—officially released July 10, 2007

*Joshua D. Koskoff*, with whom was *Cynthia C. Bolt*, for the appellants (plaintiffs).

*Stephen V. Manning*, with whom were *Donna R. Zito*, and, on the brief, *Michael G. Rigg*, for the appellee (defendant Stephen Fishman).

*Opinion*

SCHALLER, J. In this medical malpractice action, the plaintiffs, Gabriana Miller and her parents, Georgiana Miller and Aaron Scott Miller, individually and on behalf of Gabriana Miller, appeal from the decisions of the trial court to render summary judgment in favor of the defendant Stephen Fishman[1] and to deny their request for leave to file a second amended complaint. On appeal, the plaintiffs claim that the summary judgment should be reversed because the court (1) improperly failed to take their proposed amendment into account in ruling

[1] Wendy Amblo, a physician, Saint Francis Hospital and Medical Center and Woodland Women's Health Association originally were named as defendants. The plaintiffs voluntarily withdrew their complaint as to Saint Francis Hospital and Medical Center and Woodland Women's Health Association. Thereafter, the court rendered summary judgment in favor of Amblo, who is not a party to this appeal. We therefore refer in this opinion to Fishman as the defendant.

on the defendant's motion for summary judgment and (2) abused its discretion in denying their request to amend their complaint.[2] We reverse the judgment of the trial court and remand the case for further proceedings consistent with this opinion.

The record reveals the following facts and procedural history. On May 27, 1999, the minor plaintiff suffered a permanent brachial plexus injury to her left shoulder during birth. On May 21, 2001, the plaintiff parents commenced this action individually and on behalf of their daughter, broadly alleging negligence and lack of informed consent against the defendant, an obstetrician and gynecologist. Following several requests to revise, the operative pleading, the first amended complaint dated February 5, 2003, was filed by the plaintiffs.[3] In count one of their amended complaint, the plaintiffs alleged that the minor plaintiff's injury was caused by the defendant's negligence in failing to diagnose and treat properly the plaintiff mother's gestational diabetes, high blood pressure and the presence of meconium in her amniotic fluid. In count two of their amended complaint, the plaintiffs further alleged that the minor plaintiff's injury was due to the defendant's failure to obtain the informed consent of the plaintiff mother through disclosure of the risks of a vacuum assisted delivery in a case of gestational diabetes. It is undisputed that the plaintiff mother did not have gestational

[2] On appeal, the plaintiffs also claim that the court improperly rendered summary judgment in favor of the defendant because there were genuine issues of material fact to be decided by a jury. The plaintiffs assert, in essence, that the court improperly concluded that expert testimony was required to support their claim of lack of informed consent and that the court applied an overly narrow reading of their operative complaint in rendering summary judgment. Because we reverse the judgment on other grounds, we decline to reach these issues.

[3] On February 20, 2007, pursuant to an order by this court, the trial court ordered a rectification of the record to include the first amended complaint in the trial court file and the docket summary and to reflect a filing date of February 5, 2003, as stipulated to by the parties.

diabetes, high blood pressure or meconium in her amniotic fluid.

On February 19, 2004, the defendant filed a motion for summary judgment, asserting that there was no evidence that the plaintiff mother had gestational diabetes, high blood pressure or meconium in her amniotic fluid when he first treated her on May 27, 1999, or that the defendant failed to diagnose these conditions. The defendant further asserted that the plaintiffs lacked expert testimony to support their claims that the delivery complications were the result of the defendant's negligence with respect to these conditions. In their objection to the summary judgment motion, the plaintiffs cited the need for additional discovery and indicated that they subsequently would amend their complaint to set forth fully their allegations of negligence. The court granted a continuance of the defendant's motion.

On May 27, 2005, the defendant filed a renewed motion for summary judgment, reasserting that the plaintiffs lacked evidence and expert testimony to support the allegations in their operative complaint. On July 13, 2005, following the deposition of the plaintiffs' expert, Lawrence S. Borow, an obstetrician and gynecologist, the defendant filed a supplemental memorandum of law in support of his summary judgment motion, arguing that Borow's testimony did not support the allegations of the operative complaint. The plaintiffs' objection to the defendant's motion for summary judgment was submitted on July 22, 2005.

On July 14, 2005, after obtaining new counsel,[4] the plaintiffs filed a request for leave to amend their complaint to conform their allegations against the defendant

[1] Both the original complaint and the first amended complaint were filed by Ross A. Annenberg, an attorney with the Massachusetts law firm of Annenberg & Levine, LLC, licensed to practice law in Connecticut. On November 5, 2001, the court granted Annenberg's motion for the admission of his partner, Kenneth M. Levine, to appear pro hac vice. Levine's pro hac

to the facts of their case as had been revealed through discovery. In their proposed second amended complaint, the plaintiffs contended, inter alia, that the defendant negligently failed to estimate the size and weight of the infant adequately and properly, failed to evaluate the quality of the mother's labor, improperly used a vacuum extractor and failed to manage the complication of shoulder dystocia properly. The proposed amendment further alleged that the defendant failed to obtain the informed consent of the plaintiff mother as to the use of a vacuum extractor. The defendant submitted his objection to the request for leave to file an amended complaint on July 19, 2005.

The court, *Miller, J.*, granted the defendant's motion for summary judgment on August 8, 2005. The plaintiffs filed a motion for reconsideration and reargument on August 10, 2005, which the court denied. That same day, the court, *Langenbach, J.*, denied the plaintiffs' request for leave to file an amended complaint. This appeal followed. Additional facts will be set forth as necessary.

I

The plaintiffs claim that the court improperly failed to take their proposed amendment into account in ruling on the defendant's motion for summary judgment. We conclude that under the facts and circumstances of this case, the court abused its discretion.

In their objection to the defendant's motion for summary judgment, the plaintiffs argued that the defendant's motion was addressed to the operative complaint and, therefore, should be denied as moot because a request to amend the complaint had been filed. Despite

vice status subsequently was revoked by the court on December 27, 2004. The plaintiffs then retained the Connecticut law firm of Koskoff, Koskoff & Bieder, P.C. An appearance was filed on their behalf by the firm on June 2, 2005.

this argument, the court granted the defendant's motion for summary judgment without considering the plaintiffs' proposed amendment. Specifically, the court stated that "[t]he plaintiffs' attempt . . . to amend their complaint has had no impact whatsoever on this court's consideration of this motion. . . . The defendant is clearly entitled to a decision on his motion based on the pleadings as they now stand, not on the pleading which [the] plaintiffs would like to see become the operative complaint." (Citations omitted.) The court rendered summary judgment upon concluding that the plaintiffs could not support the theories of liability set forth in their operative complaint because "[a]ll of the allegations of wrongdoing against [the defendant], as set forth in the first two counts of the operative complaint, are founded on the allegations concerning the plaintiff mother's gestational diabetes and high blood pressure, as well as the alleged presence of meconium in the amniotic fluid."

It is well settled that whether to allow an amendment to the pleadings rests within the discretion of the trial court. See, e.g., *Franc* v. *Bethel Holding Co.*, 73 Conn. App. 114, 132, 807 A.2d 519, cert. granted on other grounds, 262 Conn. 923, 812 A.2d 864 (2002) (appeal withdrawn October 21, 2003); see also Practice Book § 10-60.[5] The court's discretion, however, is not unfettered; it is a legal discretion subject to review. See *Cook* v. *Lawlor*, 139 Conn. 68, 71, 90 A.2d 164 (1952). "The trial court's discretion imports something more than leeway in decision making and should be exercised in conformity with the spirit of the law and should not

---

[5] Practice Book § 10-60 provides in relevant part: "(a) . . . [A] party may amend his or her pleadings . . . at any time subsequent to that stated in the preceding section in the following manner . . .

"(3) By filing a request for leave to file such amendment . . . .

"(b) The judicial authority may restrain such amendments so far as may be necessary to compel the parties to join issue in a reasonable time for trial. . . ."

impede or defeat the ends of substantial justice." (Internal quotation marks omitted.) *Costanzo* v. *Mulshine*, 94 Conn. App. 655, 662, 893 A.2d 905, cert. denied, 279 Conn. 911, 902 A.2d 1070 (2006).

In the present case, the court had before it the plaintiffs' request to amend and the defendant's objection thereto at the time that it ruled on the defendant's motion for summary judgment. In ruling on the motion for summary judgment without considering the pending request to amend, the court declined to exercise its discretion with respect to the plaintiffs' request to amend. The defendant's motion for summary judgment rested entirely on the plaintiffs' inability to support the theories of liability set forth in their operative complaint. Had the plaintiffs been allowed to amend their complaint to conform to the facts of their claims, which had been revealed in the course of discovery, the basis for summary judgment would have fallen away. In this respect, the present case is distinguishable from other cases in which requests to amend were filed in response to motions for summary judgment. For example, in *LaFlamme* v. *Dallessio*, 65 Conn. App. 1, 7, 781 A.2d 482 (2001), rev'd on other grounds, 261 Conn. 247, 802 A.2d 63 (2002), this court held that it was a proper exercise of the trial court's discretion to render summary judgment and thereafter to decline to act on a pending request to amend. In *LaFlamme*, however, the defendant's motion for summary judgment did not rest on a failure of the operative complaint that could be remedied through a proper amendment.

Although we recognize the concern that amendments could be used as tactical measures to avoid summary judgment, we conclude that in this case, in light of the potential impact of the request to amend on the motion for summary judgment, the court's failure to exercise its discretion constituted an abuse of discretion and resulted in an injustice to the plaintiffs. See *Costanzo*

v. *Mulshine*, supra, 94 Conn. App. 662. "Where . . . the trial court is properly called upon to exercise its discretion, its failure to do so is error." (Internal quotation marks omitted.) *Higgins* v. *Karp*, 243 Conn. 495, 504, 706 A.2d 1 (1998). We emphasize that we are not ruling that trial courts are required, in every instance, to consider requests to amend filed in response to motions for summary judgment. Our decision is confined by the particular facts and circumstances of this case.

Because the decisions with respect to the request to amend and the motion for summary judgment are interrelated, we must next consider whether the court abused its discretion in denying the plaintiffs' request for leave to amend their complaint.

II

The plaintiffs also claim that the court abused its discretion in refusing to permit an amendment to their operative complaint to conform to allegations that were broadly stated in their original complaint and that had surfaced during litigation. We conclude that under the circumstances of the present case, the court's denial of the plaintiffs' request to amend constituted an abuse of discretion.

"In determining whether there has been an abuse of discretion [in granting or denying an amendment], much depends on the circumstances of each case. . . . In the final analysis, the court will allow an amendment unless it will cause an unreasonable delay, mislead the opposing party, take unfair advantage of the opposing party or confuse the issues, or if there has been negligence or laches attaching to the offering party." (Citations omitted; internal quotation marks omitted.) *McNeil* v. *Riccio*, 45 Conn. App. 466, 474, 696 A.2d 1050 (1997). *"The essential tests are whether the ruling of the court will work an injustice to either the plaintiff*

*or the defendant and whether the granting of the motion will unduly delay a trial.*" (Emphasis added; internal quotation marks omitted.) *Franc* v. *Bethel Holding Co.*, supra, 73 Conn. App. 132. "In exercising its discretion with reference to a motion for leave to amend, a court should ordinarily be guided by its determination of the question whether the greater injustice will be done to the mover by denying him his day in court on the subject matter of the proposed amendment or to his adversary by granting the motion, with the resultant delay." *Cook* v. *Lawlor*, supra, 139 Conn. 72.

Following the plaintiffs' motion for articulation of the court's decision to deny the plaintiffs' request to amend, the court explained that it had exercised its discretion to deny the plaintiffs' request to amend for the following reasons: (1) the request was untimely; (2) the delay in filing the request was due to the plaintiffs' negligence; (3) granting the request would unduly delay trial; (4) the proposed amendment did not relate back to the allegations of the operative complaint and, therefore, the causes of action were time barred; and (5) granting the request would be unfairly prejudicial to the defendant insofar as it would require additional experts, discovery and trial preparation.

We agree with the court that the plaintiffs were negligent in failing to file their request to amend in a timely fashion. Our review of the record reveals that the plaintiffs filed a first amended complaint in 2001 setting forth mistaken facts as to the plaintiff mother's condition and, thereafter, revised that complaint before filing the 2003 operative complaint containing the same erroneous facts. Furthermore, the plaintiffs had notice of the error well before filing their request to amend in July, 2005. Notably, before the plaintiffs moved to amend, the defendant filed two motions for summary judgment, asserting that there was no evidence that the plaintiff mother had suffered from the conditions stated in the

operative complaint. The plaintiffs, nevertheless, insist that the mistakes of the plaintiffs' former attorneys with respect to the delayed request should not be imputed to the minor plaintiff, who did not choose her attorneys. They further contend that in denying their request to amend, the court improperly failed to fulfill its obligation to protect and safeguard the well-being of minors. We rejected this very argument in *Skinner* v. *Doelger*, 99 Conn. App. 540, 561–62, 915 A.2d 314, cert. denied, 282 Conn. 902, 919 A.2d 1037 (2007). Indeed, it is well established that a client may be held accountable for the transgressions of his attorney; see *Gionfrido* v. *Wharf Realty, Inc.*, 193 Conn. 28, 33, 474 A.2d 787 (1984); and our courts have not created an exception to this rule for minor litigants. See *Ruddock* v. *Burrowes*, 243 Conn. 569, 706 A.2d 967 (1998); *Skinner* v. *Doelger*, supra, 561–62.

Although we agree with the court that the plaintiffs were negligent in failing to file a timely request to amend, we do not agree that under the circumstances of this case, granting the amendment would have unduly delayed trial or unfairly prejudiced the defendant. The plaintiffs' request to amend was filed approximately one month prior to the date jury selection was scheduled to begin and did not set forth new theories of liability. Rather, the proposed amendment merely enumerated the specific facts supporting the plaintiffs' claims that had been revealed through discovery. The circumstances under which our courts have held that requests to amend properly were denied are considerably more egregious than those of the present case. See *Rizzuto* v. *Davidson Ladders, Inc.*, 280 Conn. 225, 258, 905 A.2d 1165 (2006); *AirKaman, Inc.* v. *Groppo*, 221 Conn. 751, 767, 607 A.2d 410 (1992) (trial court did not abuse discretion by denying request to amend complaint where pleadings had been closed, opposing party had submitted trial brief and claim would require additional discovery), superseded by statute on other grounds as stated

in *Renaissance Management Co.* v. *Commissioner of Revenue Services*, 48 Conn. Sup. 221, 838 A.2d 260 (2002), aff'd, 267 Conn. 188, 836 A.2d 1180 (2003); *Connecticut National Bank* v. *Douglas*, 221 Conn. 530, 548, 606 A.2d 684 (1992) (trial court did not abuse discretion by denying request to amend that was filed approximately two weeks before trial and 'would have added lengthy new allegations of fact and law'); *Beckman* v. *Jalich Homes, Inc.*, 190 Conn. 299, 303, 460 A.2d 488 (1983) (trial court did not abuse discretion by denying request to amend that was filed day before trial and would have added new bases of liability); but see *Cook* v. *Lawlor*, supra, 139 Conn. 72–73 (trial court abused discretion in disallowing proposed amendment not requested during or on eve of trial that would have provided vital defense if permitted).

Moreover, in the present case, the defendant was put on notice, through discovery, that the allegations against him did not arise from the conditions of gestational diabetes, high blood pressure and meconium in the amniotic fluid as stated in the operative complaint. In April, 2003, the plaintiffs responded to interrogatories by stating that "the plaintiff [mother] [had] not been diagnosed with gestational diabetes." In his affidavit dated February 10, 2004, the defendant attested that "[a]t no time during [the plaintiff mother's] pregnancy . . . did [he] diagnose her as having gestational diabetes [or] pregnancy induced hypertension." He also stated that the plaintiff mother "had no clinical indications of gestational diabetes" or "clinical problems associated with pregnancy induced hypertension [or] the presence of meconium" on the date of delivery. Further, as discovery proceeded, the specific theory underlying the plaintiffs' claims of negligence and lack of informed consent became apparent through the opinions of their expert witnesses. In an affidavit prepared in April, 2004, the plaintiffs' expert, Berto Lopez, an obstetrician and

gynecologist, concluded that the plaintiff infant's injury was the result of the defendant's failure to manage properly the complication of shoulder dystocia and his improper use of the vacuum. Specifically, Lopez stated that "[t]he application of the vacuum extraction in light of a known or suspected shoulder dystocia is below the standard of care of the average qualified obstetrician." Thereafter, in April, 2005, the plaintiff disclosed that their second expert, Borow, would testify that in his opinion, to a reasonable degree of medical certainty, the plaintiff infant's injury "was caused by excessive traction to the fetal head and neck . . . without recognizing the shoulder dystocia" and that "a cesarean section, not a vacuum extraction in this high risk for injury case, was indicated."

The defendant thus had been apprised of the actual bases of the plaintiffs' claims through the course of the litigation. In fairness, the proposed amendment did not alter the substance of the plaintiffs' claims, and, therefore, the preparation of a defense would not have required significant additional time and resources, resulting in delay and prejudicing the defendant. See *Tornaquindici* v. *Keggi*, 94 Conn. App. 828, 843–44, 894 A.2d 1019 (2006) (trial court properly exercised discretion to allow amendment to complaint upon finding amendment adding specification of damages of which defendant had been apprised through litigation would not result in undue delay or prejudice opposing party); *Bourquin* v. *Melsungen*, 40 Conn. App. 302, 309–12, 670 A.2d 1322, (proposed amendment that did not enlarge original specifications of negligence or inject new facts of which defendant unaware would not have delayed trial and should have been permitted), cert. denied, 237 Conn. 909, 675 A.2d 456 (1996).

We further conclude that the proposed amended complaint related back to the *original complaint*, and, therefore, the plaintiffs' causes of action were not

barred by the applicable statute of limitations.[6] In denying the plaintiffs' request to amend on the basis of the relation back doctrine, the court improperly relied on the operative complaint, which had been filed beyond the limitations period. The relevant complaint for purposes of the relation back doctrine is the original complaint. Indeed, it is well settled that an amended complaint relates back to and is treated as filed at the time of the *original complaint* unless it alleges a new cause of action. *Jonap* v. *Silver*, 1 Conn. App. 550, 555, 474 A.2d 800 (1984). Thus, an amendment cannot allege a new cause of action that would be barred by the statute of limitations if filed independently. 1 E. Stephenson, Connecticut Civil Procedure (3d Ed. 1997) § 55 e, pp. 185–86. "Our relation back doctrine provides that an amendment relates back when the original complaint has given the party fair notice that a claim is being asserted stemming from a particular transaction or occurrence, thereby serving the objectives of our statute of limitations, namely, to protect parties from having to defend against stale claims . . . ." (Internal quotation marks omitted.) *Franc* v. *Bethel Holding Co.*, supra, 73 Conn. App. 136.

The defendant nonetheless argues that the proposed amendment must relate back to the operative complaint, if at all, because the original complaint was effectively withdrawn upon the filing of the first amended

---

[6] The statute of limitations for medical malpractice actions is set forth in General Statutes § 52-584, which provides: "No action to recover damages for injury to the person, or to real or personal property, caused by negligence, or by reckless or wanton misconduct, or by malpractice of a physician, surgeon, dentist, podiatrist, chiropractor, hospital or sanatorium, shall be brought but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered, and except that no such action may be brought more than three years from the date of the act or omission complained of, except that a counterclaim may be interposed in any such action any time before the pleadings in such action are finally closed."

complaint. We are not persuaded. Although it is well settled that "[t]he voluntary filing of an amended complaint operates as a withdrawal of the prior complaint [so that the prior complaint] can furnish no basis for a judgment, nor can any previous ruling on it be made a subject of appeal"; *Connecticut Bank of Commerce* v. *Giordano*, 67 Conn. App. 79, 81, 787 A.2d 9 (2001), cert. denied, 259 Conn. 929, 793 A.2d 253 (2002); whether an amendment relates back to an original complaint for statute of limitations purposes presents a different procedural issue.

With reference to the original complaint, our inquiry as to whether the plaintiffs' proposed amendment related back centers on whether the proposed amendment sets forth new causes of action. We conclude that it did not. "A cause of action is that single group of facts which is claimed to have brought about an unlawful injury to the plaintiff and which entitles the plaintiff to relief. . . . A right of action at law arises from the existence of a primary right in the plaintiff, and an invasion of that right by some delict on the part of the defendant. The facts which establish the existence of that right and that delict constitute the cause of action. . . . A change in, or an addition to, a ground of negligence or an act of negligence arising out of the single group of facts which was originally claimed to have brought about the unlawful injury to the plaintiff does not change the cause of action. . . . It is proper to amplify or expand what has already been alleged in support of a cause of action, provided the identity of the cause of action remains substantially the same, but where an entirely new and different factual situation is presented, a new and different cause of action is stated." (Internal quotation marks omitted.) *Alswanger* v. *Smego*, 257 Conn. 58, 64–65, 776 A.2d 444 (2001).

With these legal principles in mind, we turn to the specific circumstances of the present case. The causes

of action, as generally stated in the plaintiffs' original complaint, arose from the defendant's allegedly negligent treatment of the plaintiff mother and failure to obtain her informed consent through disclosure of the material risks of and alternatives to his chosen treatment during the period of August, 1998, through May 27, 1999, the date of delivery. The claims asserted in the original complaint encompassed the defendant's alleged negligence in managing the delivery of the minor plaintiff and his failure to obtain informed consent as to the use of the vacuum. The amendment did not change the identity of the causes of action; it merely specified the ways in which the defendant was negligent in delivering the minor plaintiff and the manner in which he failed to obtain the informed consent of the plaintiff mother. The amendment further delineated the precise injuries sustained by the minor plaintiff. The amendment properly amplified or expanded the allegations broadly stated in the original complaint and, therefore, related back to the original complaint.

In balancing the factors to be considered in ruling on a motion to amend, we conclude that under the facts and circumstances of this case, the court abused its discretion in denying the plaintiffs' request to amend. As we previously noted, the court's discretion should be "exercised in conformity with the spirit of the law and should not impede or defeat the ends of substantial justice." *Costanzo* v. *Mulshine*, supra, 94 Conn. App. 662. Here, as a result of the court's denial of their request to amend, the plaintiffs were prevented from pursuing their claims on the merits against the defendant in a trial. Because the amendment properly related back to the original complaint and would not have unduly delayed trial or unfairly prejudiced the defendant, the denial of the request to amend resulted in an injustice to the plaintiffs. See *Cook* v. *Lawlor*, supra, 139 Conn. 72–73; cf. *Franc* v. *Bethel Holding Co.*, supra, 73 Conn.

App. 132. In light of our conclusion that the court should have allowed the plaintiffs to amend their complaint, it follows that the summary judgment rendered on the ground that the plaintiffs could not support the allegations set forth in their operative complaint must be reversed.

The judgment is reversed and the case is remanded for further proceedings according to law.

In this opinion the other judges concurred.