******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

DONALD BRIERE ET AL. *v.* GREATER HARTFORD
ORTHOPEDIC GROUP, P.C., ET AL.
(AC 36075)

Lavine, Prescott and Schaller, Js.

*Argued February 3—officially released June 23, 2015*

(Appeal from Superior Court, judicial district of
Middlesex, Aurigemma, J. [request for leave to amend;
summary judgment].)

*Ron Murphy*, for the appellants (plaintiffs).

*Lorinda S. Coon*, with whom, on the brief, was *John
W. Sitarz*, for the appellees (defendants).

*Opinion*

LAVINE, J. The principal issue in this medical malpractice appeal is whether allegations stated in an amended complaint related back to the original complaint and, therefore, were timely under General Statutes § 52-584. The plaintiff Donald Briere[1] appeals from the judgment of the trial court granting summary judgment in favor of the defendants, David Kruger, an orthopedic surgeon, and Greater Hartford Orthopedic Group, P.C.

On appeal, the plaintiff claims that the trial court improperly concluded that the plaintiff's proposed amended complaint did not relate back to the original complaint and was time barred.[2] In light of the manner in which discovery in this case unfolded, and reading the original complaint broadly but reasonably, we conclude that the amended allegations of negligence as to the way in which the spinal surgery was performed on the plaintiff relate back to the allegations pleaded in the original complaint. The cause of action is, therefore, not barred by the statute of limitations. Accordingly, we reverse the judgment of the trial court.

The following procedural history and undisputed facts, as alleged in the pleadings, are relevant to the disposition of the plaintiff's appeal. On May 21, 2008, Kruger, an employee of Greater Hartford Orthopedic Group, P.C., performed a cervical laminectomy on the plaintiff to remove bone at the C7 level of his spine.[3] During the surgery, an electrophysiologic monitor indicated an abnormal signal in the plaintiff's nerve function and Kruger aborted the surgery. The plaintiff sustained a spinal cord contusion, leaving him quadriparetic[4] and with sensory loss. The plaintiff initiated this action and filed a complaint dated October 23, 2009. In counts one and two of the complaint, the plaintiff alleged that Kruger performed the surgery in a negligent manner.[5] In count three, the plaintiff pleaded the doctrine of res ipsa loquitur. In counts four and five, the plaintiff alleged loss of consortium.

The plaintiff alleged his general negligence theory in counts one and two, asserting that Kruger's negligent care of the plaintiff during surgery fell below the acceptable standard of care when "Dr. Kruger failed to perform a safe and effective operation." In count three, the plaintiff further alleged that "[t]he damage to [the plaintiff's] spinal cord at C3-4-5 is ordinarily not seen in the course of surgery at C6-7 in the absence of someone's negligence" and "[t]he injuries were caused by an instrumentality solely within the defendants' control."

On January 12, 2010, the defendants filed a request to revise the plaintiff's complaint. In the request to revise, the defendants sought a more complete or particular statement for the following allegations: in counts one and two, "Dr. Kruger failed to perform a safe and

effective operation"; in count three, "[t]he damage to [the plaintiff's] spinal cord at C-3-4-5 is ordinarily not seen in the course of surgery at C6-7 in the absence of someone's negligence." The trial court, *Holzberg, J.*, sustained the plaintiff's objection to the defendants' request to revise.

On October 24, 2011, the plaintiff disclosed James Macon, a neurosurgeon, as one of his expert witnesses. According to the disclosure, Macon was to testify that the plaintiff's injury was not the result of the positioning of his head and neck but instead was proximately caused by a negligently placed retractor blade used during the surgery (retractor theory). Specifically, his disclosed opinion was "it is more likely than not that there is a retractor blade pressing on the spinal cord at the level of the contusion . . . that the loss of signal occurred within minutes of Kruger's moving the retractors to C3-4, and that the damage to [the plaintiff's] spinal cord was more likely than not caused by the negligently placed medial retractor blade." The defendants deposed Macon on March 28, 2012.

On April 27, 2012, the plaintiff sought leave to amend the complaint to allege, inter alia, that after making an incision, Kruger negligently placed a retractor at C3-4 and the plaintiff suffered a spinal cord contusion due to the retractor's pressing on the spinal cord. The defendants objected on the ground that such allegations would add a new negligence claim that was barred by the statute of limitations under § 52-584.[6] On July 9, 2012, the court, *Aurigemma, J.*, sustained the defendants' objection without opinion. The plaintiff moved for an articulation and for reargument on the ground that he had not been permitted to argue against the defendants' objection. Judge Aurigemma granted the motions and on August 6, 2012, heard argument on the request for leave to amend the complaint and the defendants' objection. After hearing from both parties, Judge Aurigemma denied the plaintiff's request to amend concluding that "the proposed amended complaint relates to a completely different type of negligence with different underlying facts than the negligence referred to in the original complaint."

On August 17, 2012, the defendants filed a motion for summary judgment, asserting that the plaintiff could not produce expert testimony necessary to support his claim of negligence alleged in the original complaint. The court, *Domnarski, J.*, denied the defendants' motion for summary judgment as to the medical negligence and loss of consortium counts but granted the motion as to the count alleging res ipsa loquitur. On December 18, 2012, the plaintiff filed a second request for leave to file an amended complaint. On December 31, 2012, the defendants objected to the plaintiff's request for leave, filed a motion for further articulation directed to Judge Aurigemma's August 6, 2012 ruling

on the plaintiff's proposed amendment, and filed a motion to reargue, reconsider, and vacate Judge Domnarski's ruling on their motion for summary judgment.

On May 31, 2013, at Judge Aurigemma's urging,[7] the parties entered into a stipulation in which "the plaintiffs reluctantly and under protest stipulate that the Defendants' Motion to Reargue, Reconsider, and Vacate Ruling on Motion for Summary Judgment may be granted by Judge Domnarski" and referred the motion for summary judgment to Judge Aurigemma for decision. Pursuant to the stipulation, Judge Domnarski vacated his ruling on the motion for summary judgment. On August 15, 2013, Judge Aurigemma sustained the defendants' objection to the second proposed amended complaint and, on August 21, 2015, granted summary judgment on all counts of the original complaint. This appeal followed. Additional facts will be set forth as necessary.

The plaintiff claims that the court improperly failed to take his proposed amended complaint into account when it ruled on the defendants' motion for summary judgment.[8] The plaintiff argues that the trial court improperly determined that his amended complaint sought to add allegations that did not relate back to those in the original complaint and, therefore, were time barred by the two year statute of limitations set forth in § 52-584. Specifically, the plaintiff argues that the court's construction of his original complaint is unduly restrictive. Under the facts and circumstances of this case, we agree with the plaintiff that the court took too narrow a view of the allegations contained in the original complaint, namely, that "Dr. Kruger failed to perform a safe and effective operation."

We begin by setting forth our standard of review. Our Supreme Court has previously stated that "the de novo standard of review is *always* the applicable standard of review for resolving whether subsequent amendments to a complaint relate back for purposes of the statute of limitations." (Emphasis in original.) *Sherman* v. *Ronco*, 294 Conn. 548, 554 n.10, 985 A.2d 1042 (2010); but see *Austin-Casares* v. *Safeco Ins. Co. of America*, 310 Conn. 640, 660 n.15, 81 A.3d 200 (2013) ("[t]his court previously has not determined whether, on appeal, the trial court's application of the relation back doctrine is subject to an abuse of discretion standard or a de novo review"). Our review of the plaintiff's claims, therefore, will be de novo pending any further clarification from our Supreme Court.

"Our relation back doctrine provides that an amendment relates back when the original complaint has given the party fair notice that a claim is being asserted stemming from a particular transaction or occurrence, thereby serving the objectives of our statute of limitations, namely, to protect parties from having to defend against stale claims. . . . To relate back to an earlier complaint, the amendment must arise from a single

group of facts. . . . In determining whether an amendment relates back to an earlier pleading, we construe pleadings broadly and realistically, rather than narrowly and technically. . . . [T]he complaint must be read in its entirety in such a way as to give effect to the pleading with reference to the general theory upon which it proceeded, and do substantial justice between the parties. . . . Our reading of pleadings in a manner that advances substantial justice means that a pleading must be construed reasonably, to contain all that it fairly means, but carries with it the related proposition that it must not be contorted in such a way so as to strain the bounds of rational comprehension. . . . Finally, in the cases in which we have determined that an amendment does not relate back to an earlier pleading, the amendment presented different issues or depended on different factual circumstances rather than merely amplifying or expanding upon previous allegations." (Citations omitted; internal quotation marks omitted.) *Grenier* v. *Commissioner of Transportation*, 306 Conn. 523, 559–60, 51 A.3d 367 (2012).

"With reference to the original complaint, our inquiry as to whether the plaintiffs' proposed amendment related back centers on whether the proposed amendment set forth new causes of action. . . . A cause of action is that single group of facts which is claimed to have brought about an unlawful injury to the plaintiff and which entitles the plaintiff to relief. . . . A right of action at law arises from the existence of a primary right in the plaintiff, and an invasion of that right by some delict on the part of the defendant. The facts which establish the existence of that right and that delict constitute a cause of action. . . . *A change in, or an addition to, a ground of negligence or an act of negligence arising out of the single group of facts which was originally claimed to have brought about the unlawful injury to the plaintiff does not change the cause of action. . . . It is proper to amplify or expand what has already been alleged in support of a cause of action, provided the identity of the cause of action remains substantially the same, but where an entirely new and different factual situation is presented, a new and different cause of action is stated.*" (Emphasis added; internal quotation marks omitted.) *Miller* v. *Fishman*, 102 Conn. App. 286, 299, 925 A.2d 441 (2007), cert. denied, 285 Conn. 905, 942 A.2d 414 (2008).

With these legal principles in mind, we first examine the allegations in the original complaint. The plaintiff's theory that Kruger was negligent in the manner in which he performed the surgery is alleged in counts one and two. Paragraph 36 (A) through (G) set forth the following allegations of negligence:

"(A) Dr. Kruger failed to plan a safe and effective operation.

"(B) *Dr. Kruger failed to perform a safe and effec-*

*tive operation.*

"(C) Dr. Kruger failed to position [the plaintiff] safely and securely on the operating table; and/or

"(D) Dr. Kruger failed to make sure the skull clamp was safely and securely applied to [the plaintiff's] skull; and/or

"(E) Dr. Kruger failed to make sure the locking device connecting the skull clamp to the [operating room] table was safe and securely applied; and/or

"(F) Dr. Kruger failed to make sure that [the plaintiff's] positioning in the Wilson frame was safe and secure; and/or

"(G) Dr. Kruger failed to make sure that [the plaintiff] would not move during the surgery." (Emphasis added.)

Count three, paragraph 36 (A) and (B) set forth the following allegations of res ipsa loquitur:

"(A) *The damage to [the plaintiff's] spinal cord at C3-4-5 is ordinarily not seen in the course of surgery at C6-7 in the absence of someone's negligence.*

"(B) *The injuries were caused by an instrumentality solely within the defendants' control.*" (Emphasis added.)

Paragraph 45 of the plaintiff's proposed amended complaint deleted five of the aforementioned allegations in count one and, instead, pleaded the following allegations:

"(A) Dr. Kruger failed to plan a safe and effective operation, and/or

"(B) Dr. Kruger failed to perform a safe and effective operation, and/or

"(C) Dr. Kruger failed to apply the retractor at C3-4 properly, and/or

"(D) Dr. Kruger failed to apply the retractor at C3-4 properly so that the blades would not shift when the retractor was opened."

In comparing the original complaint with the proposed amended complaint, we conclude that the proposed amendments relate back. We are mindful that "we long have eschewed the notion that pleadings should be read in a hypertechnical manner. Rather, [t]he modern trend, which is followed in Connecticut, is to construe pleadings broadly and realistically, rather than narrowly and technically." (Internal quotation marks omitted.) *Grenier* v. *Commissioner of Transportation*, supra, 306 Conn. 536. Reading the original complaint broadly and realistically, the proposed amendments did not change the nature of the plaintiff's theory of the case that Kruger performed the spinal surgery negligently. The amendments alleging that the defendants were negligent in placing a retractor at C3-

4 related back to the general allegations in the original complaint that:

"[Count One] 36. (B) Dr. Kruger failed to perform a safe and effective operation.

"[Count Three] 36. (A) The damage to [the plaintiff's] spinal cord at C3-4-5 is ordinarily not seen in the course of surgery at C6-7 in the absence of someone's negligence.

"(B) The injuries were caused by an instrumentality solely within the defendants' control."

The cause of action, as generally alleged in the original complaint, arose from the defendants' alleged negligent care of the plaintiff during surgery, which caused injury to his spinal cord at C3-4 leading to quadriparesis. The allegations found in proposed paragraphs 45 (A) through (D), which pertain to the retractor theory, arise out of the same set of facts set forth in the original complaint, that is, the defendants' failure to perform a safe and effective operation, which caused the plaintiff's injury. The original complaint specified a general allegation of negligence during surgery with specific allegations delineating the exact location and type of the injury suffered. The amendments did not allege a new theory of negligence but merely specified the precise way in which the defendants were alleged to have been negligent during surgery. The amended complaint therefore, "did not inject two different sets of circumstances and depend on different facts . . . which would preclude the . . . amended complaint from relating back to the original . . . complaint." (Citation omitted; internal quotation marks omitted.) *Grenier* v. *Commissioner of Transportation*, supra, 306 Conn. 562.

"Fair notice of the [plaintiffs'] claim is all that is required to satisfy the objectives of the statute of limitations." Id., 563. "This particular focus is guided by the policy reasons underlying the relation back doctrine— namely, ensuring that parties receive fair notice while at the same time allowing parties who have complied with the applicable statute of limitations the benefit of expanding upon existing claims." *Sherman* v. *Ronco*, supra, 294 Conn. 556–57. The plaintiff argues that the general allegations put the defendants on notice of the plaintiff's theory of his case, that Kruger performed the surgery in a negligent manner. The defendants had adequate notice, within the statute of limitations, that a claim was being asserted against them arising out of the negligent performance of the plaintiff's surgery. The structure of the original complaint illustrates that the allegations in paragraphs 36 (D) through (G), pertaining to the positioning of the plaintiff's head and neck, were not meant to supersede the overarching negligence allegation that Kruger performed the surgery in a negligent manner. The fact that the plaintiff pleaded res ipsa

loquitur indicates some lack of certitude as to the precise mechanism that led to the plaintiff's injury. Notwithstanding this, the defendants were put on notice of the underlying fact that, during the surgery, Kruger had sole control over the plaintiff's body and that as a consequence of his negligent conduct the plaintiff was left quadriparetic.

The plaintiff also contends that Judge Holzberg's denial of the defendants' request to revise gave the plaintiff time to specify the details of his theory of negligence during discovery. In the request to revise, the defendants sought "a more complete or particular statement" of how Kruger failed to perform a safe operation and how the plaintiff's type of spinal injury is not seen in the absence of negligence. The plaintiff objected by stating: "While the defendants are entitled to further detail, the complaint is not the place for an exposition of the details of the plaintiff's view of [his] case or the opinions of [his] experts. *They will have to wait for expert disclosure and deposition.*" Judge Holzberg sustained the plaintiff's objection to the defendants' request to revise, which in effect left the issue open for further development and affirmed that the plaintiff was not required to plead subordinate facts with absolute precision at that point in the procedural history. We note that the defendants initially sought a more complete statement with regard to the general allegations and then opposed the plaintiff's subsequent amendments that expounded upon such allegations.[9]

Furthermore, the plaintiff timely disclosed Macon and his opinion regarding the retractor theory on October 24, 2011. The defendants were further put on notice of the retractor theory when they deposed Macon on March 28, 2012. The plaintiff's request to amend was filed approximately ten months prior to the jury selection date. Under the factual circumstances of this case and its procedural history, the defendants were given more than fair notice of the plaintiff's claims regarding the retractor theory. The proposed amendments merely elaborated on the specific facts supporting the plaintiff's negligence claims that were progressively revealed through the ongoing process of discovery. See *Miller* v. *Fishman*, supra, 102 Conn. App. 296–97.

The defendants' argument centers on the claim that the plaintiff's retractor theory "is an entirely different 'wrongful act or omission,'. . . [i]t is a different delict and therefore a different cause of action." The defendants argue that the general theory alleged in the original complaint was limited to a claim of negligence related to the improper positioning of the plaintiff's head during surgery. Accordingly, they argue that the plaintiff's reliance on the general allegation that "Dr. Kruger failed to perform a safe and effective operation" is improper because the overbroad allegation should not be used to "claim *anything* having to do with the

surgery." We disagree.

The defendants' reliance on *Dimmock* v. *Lawrence & Memorial Hospital, Inc.*, 286 Conn. 789, 945 A.2d 955 (2008), is misplaced. In *Dimmock*, our Supreme Court held that the proposed amended complaint of the plaintiff, Susan Dimmock, did not relate back to the operative complaint. Id., 798. The operative complaint in *Dimmock* presented a unique procedural history on which the court heavily relied. Id., 803. The operative complaint resulted from the merging of Dimmock's two prior causes of action, each of which raised distinct claims of negligence related to the cause and treatment of her postsurgical infection and the diagnosis and treatment of her back condition, respectively. Id. Although "the overwhelming thrust of the operative complaint related to [Dimmock's] infection," the pleadings also set out several general negligence allegations. Id., 802–803. The court held that "the trial court improperly determined that the operative complaint was limited to claims relating to the plaintiff's infection" and therefore the trial court should have interpreted the pleadings broadly in relation to the general negligence allegations. Id., 797–98. The court held, however, that even though the trial court unduly narrowed its interpretation of the operative complaint, the new allegations did not relate back to it. Id., 798.

*Dimmock* is distinguishable because Dimmock's proposed amended complaint *directly contradicted* allegations in the operative complaint. Id., 806. Dimmock's operative complaint alleged that the defendant should *not* have performed a spinal fusion, while the proposed amended complaint alleged that the defendant should have performed the spinal fusion, but with different fusion material. Id., 805. The court noted, "we are unaware of any case in which this court has held that new allegations that replace and *directly contradict* those in the operative complaint have been deemed to amplify, and hence relate back, to those in the operative complaint." (Emphasis in original.) Id., 806.

Additionally, our Supreme Court rejected Dimmock's reliance on a general negligence allegation in the operative complaint to support the relation back doctrine. Id., 808–809. The court was able to identify which allegations came from which of the two prior complaints and which distinct theory of negligence each complaint supported. Id., 804. The general allegation stated that the defendants "failed to establish a proper patient care plan for [Dimmock]. . . ." (Internal quotation marks omitted.) Id., 808. This general negligence allegation arose from the prior cause of action related to Dimmock's postsurgical infection. Id., 809. The court identified the origins of the general allegation and, thus, held that the "new allegations of negligence relating to the use of instrumentation had no relationship to the cause or effect of [Dimmock's] infection" and, therefore, they

did not relate back. Id.

The defendants cite to *Sherman* v. *Ronco*, supra, 294 Conn. 548, in which our Supreme Court noted that the contrast between prior cases before the court "provides useful guidance as to when an amendment that adds an alternate theory of liability may relate back to an earlier, timely complaint." Id., 563. The court stated that "[i]f the alternate theory of liability may be supported by the original factual allegations, then the mere fact that the amendment adds a new theory of liability is not a bar to the application of the relation back doctrine. . . . If, however, the new theory of liability is not supported by the original factual allegations of the earlier, timely complaint, and would require the presentation of new and different evidence, the amendment does not relate back."[10] (Citation omitted.) Id.

The present case is distinguishable from both *Dimmock* and *Sherman*. Unlike in *Dimmock*, the allegations in the proposed amended complaint do not contradict the allegations in the original complaint. The original complaint in the present case alleged that Kruger performed the plaintiff's surgery in a negligent manner. The amended complaint merely specifies the manner in which Kruger was allegedly negligent. Unlike *Sherman*, the evidence necessary to support and defend the plaintiff's claim would remain the same: how the defendants performed the plaintiff's surgery. See footnote 10 of this opinion.

Cases analyzing the relation back doctrine are predicated on the specific facts in issue. We acknowledge that if this court were to take a narrow, hypertechnical reading of the pleadings before us, we could come to a different conclusion. Medical malpractice actions present a conundrum in that there is typically unequal access to the underlying facts and conditions of the claim at the time a complaint is served. The reality in medical malpractice cases is that plaintiffs must heavily rely on the discovery process as it unfolds to flesh out their claims, and the locating of expert witnesses to explain, analyze, and testify about complex scenarios. In fact, our rules of practice allow parties to submit a proposed schedule for expert discovery within 120 days after the return date. See Practice Book § 13-4 (g) (1) ("[t]he deadlines proposed by the parties shall be realistic and reasonable, taking into account the nature and relative complexity of the case"). In consideration of the facts of this case, we conclude that a better reading of the pleadings is a broad but pragmatic one that promotes substantial justice in this case.

Under the specific facts of this case, in particular the way in which discovery unfolded, we conclude that the allegations in the proposed amended complaint related back and therefore were not barred by the statute of limitations. Because we conclude that the court should have allowed the plaintiff to amend his complaint, it

follows that the summary judgment rendered on the ground that the plaintiff could not support the allegations set forth in his original complaint must be reversed.

The judgment is reversed and the case is remanded for further proceedings according to law.

In this opinion the other judges concurred.

[1] Nancy Briere is also a plaintiff in this action. Her loss of consortium claims are derivative of her husband's negligence claims. For convenience, all references to the plaintiff in this opinion are to Donald Briere.

[2] The plaintiff also claims that the court abused its discretion in reassigning the case for trial. Because we reverse the judgment on the basis of the plaintiff's first claim, we need not reach his second claim and provide a discussion of the procedural history only insofar as it relates to the first claim.

[3] Lamina is the bony arch of one or more vertebrae. See Stedman's Medical Dictionary (28th Ed. 2006) p. 1046.

[4] Quadriparesis is a partial or incomplete paralysis marked by weakness in all four extremities. See Stedman's Medical Dictionary (28th Ed. 2006) pp. 1425, 1616, and 1968.

[5] Specifically, the plaintiff alleged that: "36. It is more likely than not that Dr. David Kruger was negligent or careless in one or more of the following ways:

"(A) Dr. Kruger failed to plan a safe and effective operation.

"(B) Dr. Kruger failed to perform a safe and effective operation.

"(C) Dr. Kruger failed to position [the plaintiff] safely and securely on the operating table; and or

"(D) Dr. Kruger failed to make sure the skull clamp was safely and securely applied to [the plaintiff's] skull; and/or

"(E) Dr. Kruger failed to make sure the locking device connecting the skull clamp to the [operating room] table was safely and securely applied; and/or

"(F) Dr. Kruger failed to make sure that [the plaintiff's] positioning in the Wilson frame was safe and secure; and/or

"(G) Dr. Kruger failed to make sure that [the plaintiff] would not move during the surgery."

[6] General Statutes § 52-584 provides in relevant part: "No action to recover damages for injury to the person . . . caused by negligence, or by reckless or wanton misconduct, or by malpractice of a . . . surgeon . . . shall be brought but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered, and except that no such action may be brought more than three years from the date of the act or omission complained of, except that a counterclaim may be interposed in any such action any time before the pleadings in such action are finally closed."

[7] Specifically, Judge Aurigemma stated in relevant part:

"The Court: All right before we go forward I just want to briefly review the history of this case. It was filed in [2009]. In [2012], I think, the plaintiff moved to amend.

"[The Plaintiff's Counsel]: Yes, Your Honor.

"The Court: And I don't know what happened in the intervening time, but I'm sure if we went back and looked at all the docket sheets, we'd find out. There were, probably, many extensions of time to disclose experts, but, be that as it may, the motion to amend, in my view, sought to completely change the cause of action from one which alleged negligence in the way that the head and neck were positioned and the use of a Mayfield Skull Clamp, et cetera.

"And the new proposed complaint was talking about negligence with respect to a retractor. I did not allow that, and I held it did not relate back. The plaintiff argued that there was language in the complaint that the defendant, otherwise, failed to perform a safe operation, words to that effect. And that, in the plaintiff's view, would permit this new course of action.

"I disagree, obviously. I felt that then the defendant would move for summary judgment, which it did, and it would be granted because the plaintiff had no expert for the original cause of action. Unfortunately, because we have different judges it was not. It was denied.

"Judge Domnarski's view of those words, 'and was otherwise unsafe', and my view are different. And thereafter, I had—my view, generally, is that the

judge who denies summary judgment should be granted should get the trial. And that's still my view, but as I thought about this case, which is unlike many cases, is going to be fairly expensive to put on with all the expert fees involved that, in my view, I thought would not prevail in this case.

"So I know Judge Domnarski told you that he would have the case—and it's not his fault—it's my fault—I rethought about this. I'm the presiding judge. I didn't think it was fair to either party to have to go all the way through with trial, with the case, which I thought was going to be reversed on appeal. So I'm going to have the trial. My ruling still stands.

"I know Judge Domnarski said he'd consider the amendment, and so, therefore, you had to do it again. I'm sorry. You have filed to amend again, I assume, pretty much, the same amendment. Right?

"[The Plaintiff's Counsel]: Pretty much.

"The Court: If it is the same amendment I'm not going to allow it for the same reasons in my August 6, 2012 decision. I don't know how you want to proceed. The summary judgment has been denied, and I, certainly, can't change the ruling of a fellow judge. So I don't know what you want. I mean, you can either—I don't know what you want to do. I suppose, you could agree, to get to the Appellate Court the fastest way would be to ask Judge Domnarski to vacate."

[8] We note that this appeal is taken from Judge Aurigemma's order granting the defendants' motion for summary judgment. The court acknowledged, however, in its memorandum of decision that "[t]he plaintiffs' Objection to the Motion for Summary Judgment is, essentially, an attempt to reargue the Objection to the Request to Amend the complaint [and] . . . the court will address the plaintiffs' arguments in opposition to summary judgment, which were really arguments that they had been unfairly denied the right to amend their complaint." This decision, therefore, focuses on the real issue in dispute, that is, whether the plaintiff should have been permitted to amend his complaint to allege that the injury was caused by a negligently placed retractor blade.

[9] It would seem that the defendants got precisely what they asked for in their request to revise.

[10] As in all relation back cases, the court must focus on the factual predicate underlying both the original complaint and the proposed amendment. In *Sherman*, our Supreme Court found that the plaintiff's amendment would require new evidence and thus did not relate back to the original complaint. *Sherman* v. *Ronco*, supra, 294 Conn. 563. It is important to note that the plaintiff's proposed amendment shifted the theory of liability from a failure to act, i.e., negligent supervision, to intentional and malicious acts that expanded the time line of alleged improper conduct. Id., 559 ("[i]n the new scenario, [the school principal] is depicted not merely as a principal who negligently failed to recognize and take action against a teacher who was sexually abusing the plaintiff, but as a cohort who actively and knowingly sought out the plaintiff because he was vulnerable, lured him to school . . . and wilfully and maliciously placed him in the dangerous position of being in unsupervised and frequent contact with a sexual predator").

───────────────────────