GEORGE J. COSTANZO *v.* JOSEPH MULSHINE
(AC 26137)

DiPentima, Gruendel and Hennessy, Js.

Argued January 9—officially released April 4, 2006

*Thomas P. Willcutts*, for the appellant (plaintiff).

*Scott A. Stewart*, for the appellee (defendant).

*Opinion*

DiPENTIMA, J. The plaintiff, George J. Costanzo, appeals from the judgment of the trial court challenging

the amount of the attorney's fee award, which was less than the amount that he had requested. The plaintiff claims that the court abused its discretion in awarding only $1500 in fees, approximately 10 percent of the fees requested and actually incurred. We agree and, therefore, reverse the judgment of the trial court.

The underlying dispute between the parties arose in the prosecution of *Albrycht* v. *Coss*, Superior Court, judicial district of New Britain, Docket No. 503255, a personal injury case, in which the plaintiff in this case, a chiropractor, was named as an expert witness for the plaintiff in that case and the defendant in this case, Joseph Mulshine, served as the defendant's counsel. The defendant noticed the plaintiff's deposition and was informed that the plaintiff's rate of pay was $300 per hour from portal-to-portal. On the day of the deposition, the plaintiff presented the defendant with a bill for $1650, which represented his $300 rate for four hours of deposition testimony and one and one-half hours of travel time. In response, the defendant gave the plaintiff a check for $320, representing four hours of deposition testimony at the rate of $80 per hour, which the defendant claimed was a reasonable expert witness fee for the plaintiff. The plaintiff refused this tender and, thereafter, the defendant filed a motion for the court to determine a reasonable expert witness fee. Prior to a hearing on this motion, the personal injury case was settled and withdrawn so that the court never ruled on the motion and never determined an appropriate fee for the plaintiff's deposition testimony. The attorney for the plaintiff in the personal injury action filed a motion to open the judgment in that case for the sole purpose of determining the expert witness fee. The defendant vigorously opposed the motion and argued that the plaintiff had other means by which he could pursue the fee. The court agreed and denied the motion to open.

In June, 2002, the plaintiff commenced this action in the small claims session of the Superior Court seeking the $1650 he claimed as his reasonable fee. The defendant filed a motion to transfer the case to the regular docket, claiming as a "good defense" that the issue of the plaintiff's fee previously was raised and decided, and that the fee had been paid. The court initially denied the motion to transfer. The defendant, however, brought to the court's attention the case of *Cannavo Enterprises, Inc.* v. *Burns*, 194 Conn. 43, 478 A.2d 601 (1984), which he claimed stood for the proposition that transfer is a matter of right when the defendant files an affidavit that claims that a good defense to the action exists. On August 9, 2002, the court, on reconsideration, granted the defendant's motion to transfer, but stated: "The court denied the motion, initially, having concluded that it 'bordered on the frivolous.' This was a reasonable conclusion to be drawn from the statement of the defense . . . ."

Following the transfer of the case to the Superior Court, the plaintiff filed an amended complaint in which he raised no new claims, but requested attorney's fees pursuant to General Statutes § 52-251a.[1] The plaintiff also filed two motions for a protective order to permit him time to confer with his recently hired attorney prior to the defendant's taking his deposition,[2] as well as a notice objecting to four of the twenty-two requests included in the defendant's interrogatories. The defen-

[1] General Statutes § 52-251a provides: "Whenever the plaintiff prevails in a small claims matter which was transferred to the regular docket in the Superior Court on the motion of the defendant, the court may allow to the plaintiff his costs, together with reasonable attorney's fees to be taxed by the court."

[2] The defendant first noticed the plaintiff's deposition three days after the motion to transfer was granted. The plaintiff was acting pro se at that time. Neither motion was acted on by the court. Following the plaintiff's filing the motions for a protective order, the defendant rescheduled the plaintiff's deposition.

dant filed notice objecting to all requests included in the plaintiff's interrogatories. Thereafter, the defendant filed a number of motions through which he sought either disposal of the case without a hearing on its merits or delay of such a hearing. Specifically, the defendant filed (1) a motion for a nonsuit for the plaintiff's failure to answer fully all interrogatories and requests for production,[3] (2) a motion to dismiss the action with costs, on the ground that there then existed an identical motion pending in a prior action in the court, thereby making the present action duplicative and burdensome on the court and the defendant, (3) a jury claim and (4) a motion for summary judgment once the jury claim was stricken.

The court denied the defendant's motion for a nonsuit and motion to dismiss, and granted the plaintiff's motion to strike the defendant's jury claim. In denying the defendant's motion to dismiss, the court concluded that the motion was untimely and that the prior pending action doctrine was inapplicable to this case because neither the parties nor the issues were the same and *Albrycht* had been withdrawn without a ruling on the motion. Following the court's striking of the defendant's jury claim and after a trial date had been set, the defendant filed a motion for permission to file a summary judgment motion, which was granted. Although the defendant filed a motion for summary judgment, the court never ruled on the motion. Instead, the defendant tendered the disputed amount to the plaintiff, and the

---

[3] The plaintiff had answered all but four of the defendant's interrogatories and previously had filed a notice of objection to the four unanswered questions. The plaintiff's objection to the motion for a nonsuit was sustained, as were his objections to three of the four interrogatories that he had not answered. We also note that although the plaintiff had answered the defendant's interrogatories, at least in part, the defendant had filed a notice of objection to *all* interrogatories and requests for production propounded by the plaintiff.

plaintiff accepted this payment.[4] The parties then requested that the court determine attorney's fees and costs under § 52-251a.

The court held a hearing on the issue of attorney's fees on November 10, 2003. The crux of the defendant's argument at the hearing was that the amount of attorney's fees requested was outrageous when considered in relation to the amount at issue in the underlying case. The plaintiff argued that it was the tactics used by the defendant in the case that led to the high fees. In particular, the plaintiff cited the defendant's filing of motions that appeared to be contradictory, such as a jury claim and a motion for summary judgment. The plaintiff also noted the following incongruity in the defendant's pleadings. The defendant claimed, both as a defense and in his motion to dismiss, that a motion to determine the plaintiff's reasonable expert witness fee was pending in another case. In his memorandum of law in support of his motion regarding attorney's fees, however, the defendant admitted that the other case had been disposed of prior to a hearing and decision on the motion to determine a reasonable expert witness fee. At the hearing before the court, the defendant offered no explanation for these inconsistent positions.

The court issued a memorandum of decision on the matter of attorney's fees on November 25, 2003. The court concluded that even though the parties independently disposed of the dispute regarding the reasonable expert fee, the plaintiff was a prevailing plaintiff for purposes of § 52-251a. After noting that the underlying amount in demand was $1650, the court concluded that "the amount of attorney's fees demanded by the plaintiff

---

[4] We note that payment was tendered only after the plaintiff had noticed the defendant's deposition and the defendant's repeated attempts at obtaining a protective order from the taking of his deposition were denied.

is excessive under the circumstances." In ordering an award of attorney's fees of $1500, the court relied heavily on the Superior Court's decision in *LaMontagne* v. *Musano, Inc.*, Superior Court, judicial district of Waterbury, Docket No. 131911 (October 27, 1998) (23 Conn. L. Rptr. 274), aff'd, 61 Conn. App. 60, 762 A.2d 508 (2001), specifically, on the following language from the court's decision: "The court does not question that the time itemized by the plaintiff's attorney was indeed devoted to litigating this matter. Nor does the court question the reasonableness of counsel's hourly rate. However, at some point in any case involving monetary damages, and preferably at the start, it is the responsibility of litigants and their counsel to decide at what cost they intend to win. The court questions whether that determination was ever made by plaintiff and his counsel in this case, and moreover, questions whether a defendant should have to pay for a plaintiff's unreasonableness. The statute expressly limits recovery to reasonable costs and fees, not what was actually expended."

Following issuance of the court's decision, the plaintiff filed a motion for reconsideration, in which he highlighted the factual and procedural differences between his case and *LaMontagne*. The court denied the motion, and the plaintiff then filed a motion for articulation, requesting the court to articulate its reasons for concluding that the plaintiff's attorney's fees were excessive under the circumstances of this case. The court first denied the motion for articulation, but on January 5, 2004, issued a memorandum of decision on both the motion for articulation and the motion for reconsideration. The court explained that it had concluded that "an unreasonable amount of time was claimed for the prosecution of this action. . . . Instead of seeking a judicial determination in the underlying matter as to whether the plaintiff's expert witness fee of one thou-

sand six hundred fifty dollars ($1650.00) for five and one-half hours (5½) of deposition testimony [was reasonable], he filed a separate action in the small claims court." The court further explained its decision by stating: "After the matter was filed in small claims, neither party sought to have the judicial authority determine the reasonableness of the expert witness fees in the underlying matter, but instead chose to engage in what can only be described as a contentious pleading war to such an extent that it consumed the parties and their counsels' time and resources as well as the time and resources of the judicial system in a situation where the scale of the commitment was unwarranted and unreasonable. Simply put, one may not wage atomic warfare on a fly when a flyswatter will do." On December 9, 2004, the court rendered judgment in accordance with its decision, and this appeal followed.

As a general matter, we review the award of attorney's fees for a clear abuse of discretion. *Krack* v. *Action Motors Corp.*, 87 Conn. App. 687, 694, 867 A.2d 86, cert. denied, 273 Conn. 926, 871 A.2d 1031 (2005). "Sound discretion, by definition, means a discretion that is not exercised arbitrarily or wilfully, but with regard to what is right and equitable under the circumstances and the law . . . . Judicial discretion is always a legal discretion, exercised according to the recognized principles of equity. . . . The trial court's discretion imports something more than leeway in decision making and should be exercised in conformity with the spirit of the law and should not impede or defeat the ends of substantial justice." (Citation omitted; internal quotation marks omitted.) *Rodriguez* v. *Ancona*, 88 Conn. App. 193, 201–202, 868 A.2d 807 (2005). The ultimate question to be answered is, when considering whether and to what extent to award attorney's fees in light of these overarching principles, whether the trial court reasonably could have concluded as it did. See *Schoon-*

*maker* v. *Lawrence Brunoli, Inc.*, 265 Conn. 210, 253, 828 A.2d 64 (2003); *Eldridge* v. *Eldridge*, 244 Conn. 523, 534, 710 A.2d 757 (1998).

In reaching our conclusion that the court improperly awarded only $1500 in attorney's fees to the plaintiff, we rely on three factors: (1) the court's mistaken conclusion that the plaintiff should have sought his expert witness fee by filing a motion in the underlying action rather than filing a small claims action, (2) the court's consideration of the disputed amount as a gauge for the proper amount of attorney's fees and (3) the court's apparent lack of consideration of the policy underlying § 52-251a. We discuss each of these factors in turn.

In both the original memorandum of decision and the memorandum of decision that followed the court's granting of the plaintiff's motion for articulation and motion for reconsideration, the court faulted the plaintiff for not seeking resolution of the matter of his disputed fee by filing a motion to determine a reasonable expert witness fee in the underlying matter.[5] In doing so, the court essentially faulted the plaintiff for not doing the impossible. Previously, when denying the defendant's motion to dismiss on the ground that there was a prior pending action, the court had noted that the underlying matter had been withdrawn after settlement on April 19, 2002, several months prior to the filing of the plaintiff's small claims action. Furthermore, both parties agree that the court disposed of the underlying matter without considering the question of the

---

[5] In the original memorandum of decision, the court stated in a footnote: "The court notes that instead of having the trial court resolve the issue of expert fees in accordance with the Practice Book, the plaintiff took the unusual step of filing a separate legal action." The court repeated this sentiment in the January 5, 2004 memorandum of decision when it stated: "Instead of seeking a judicial determination in the underlying matter as to whether the plaintiff's expert witness fee[s] . . . [were reasonable], he filed a separate action in the small claims court."

plaintiff's disputed fee. The court in the underlying matter denied a motion to open that case for the purpose of determining the plaintiff's reasonable fee. Following that denial, the plaintiff lacked any reasonable means of resolving the issue of his fee in the underlying matter other than the initiation of a small claims action. Considering this factual background, we conclude that the court improperly faulted the plaintiff for his failure to resolve the fee dispute in the underlying action and used this failure as one of the express factors in determining what amount of attorney's fees to award him.

We also consider problematic the court's use of the amount in controversy as a gauge for the award of attorney's fees. This court previously has held that the consideration of the amount involved, isolated from all other factors, is an improper gauge for a reasonable award of attorney's fees. *Rodriguez* v. *Ancona*, supra, 88 Conn. App. 202. Although the court did not focus solely on the amount in dispute, it did consider the amount involved as a leading factor. This reliance, in and of itself, might not be sufficient for us to conclude that the court abused its discretion in forming the award, but combined with the court's finding fault with the plaintiff for his failure to pursue a remedy in the underlying matter, it leaves the award without a firm basis in reason.[6]

Our conviction that the amount involved was an improper factor by which the court could gauge a reasonable award of attorney's fees is strengthened further

---

[6] We also note that this is not a case in which "the plaintiff was aiming high and fell far short . . . in the process inflicting heavy costs on his opponent and wasting the time of the court"; (internal quotation marks omitted) *Simms* v. *Chaisson*, 277 Conn. 319, 333, 890 A.2d 548 (2006); rather it appears that the case was simply a small claim, and the plaintiff did not attempt to transform it into something more once the defendant transferred the case from small claims. See id. The fees incurred, therefore, represent those fees necessary to the litigation of this action, or at least those fees made necessary to the litigation of this action because of the defendant's conduct.

by the policy that is embodied in § 52-251a and that gave rise to the award in this case. Fifteen years ago, in *Burns* v. *Bennett*, 220 Conn. 162, 595 A.2d 877 (1991), our Supreme Court considered the purposes behind the statute permitting an award of attorney's fees to a prevailing plaintiff on a case transferred from small claims court by a defendant. The court stated: "Section 52-251a . . . creates a substantial and effective disincentive for a defendant who might otherwise raise defenses bordering on the frivolous in an effort to gain a tactical advantage over a plaintiff by obtaining a transfer of a case from the Small Claims division." Id., 169. This court recently applied that interpretation to a case in affirming an award of attorney's fees that was ten times the amount in dispute. We stated that "[t]he very purpose of § 52-251a is to deter . . . defendants from transferring a case from the small claims session and turning a relatively clear-cut case into a pitched legal battle."[7] *Krack* v. *Action Motors Corp.*, supra, 87 Conn. App. 697.

In granting the defendant's motion to transfer this case from the small claims court, the court indicated that it considered the raised defenses to border on the frivolous. One of the defenses initially raised, which was that there existed a similar motion in a prior pending action, was rejected outright by the court in its decision on the defendant's motion to dismiss. The

[7] Even though we have acknowledged that a primary purpose of § 52-251a is to deter defendants from raising and pursuing frivolous defenses in an attempt to frustrate a small claims plaintiff, we recognize that a corollary purpose of the statute is to reward those attorneys who represent small claims plaintiffs even though the monetary value of the representation may be relatively insignificant for the time and effort required. See *Simms* v. *Chaisson*, 277 Conn. 319, 334, 890 A.2d 548 (2006) (noting that one purpose behind statute providing for attorney's fees in civil rights' cases or cases involving hate crimes is to give incentives to attorneys, who represent those litigants, raising claims that involve small violations with hope of minimal monetary recovery).

other defense, that the fee had been paid, never was pursued seriously by the defendant.[8] Instead, the defendant first transferred the case to the Superior Court, immediately noticed the plaintiff's deposition and filed numerous motions as roadblocks to the consideration of the plaintiff's claim on the merits. The defendant's repeated filing of motions to reargue motions of his that had been denied by the court, in particular his jury claim and motion for a protective order, serve as testaments to the methods the defendant used to keep the plaintiff from having his day in court. That he then sought to limit the plaintiff's recovery of attorney's fees by touting the plaintiff's "win at all costs" manner of litigation while the plaintiff incurred most of those costs in responding to the defendant's motions, suggests to us that the conduct of this defendant is that which § 52-251a was promulgated to deter. That this defendant failed to heed the warning and now faces paying ten times the disputed amount in attorney's fees is no reason to strip the statute of its intended effect. The court's apparent lack of consideration of the policy behind § 52-251a and its focus on the amount in controversy in conjunction with its finding fault with the plaintiff for his failure to resolve the dispute in the underlying action constitute an abuse of discretion in forming this award of attorney's fees.[9]

The judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

In this opinion the other judges concurred.

[8] We pass no judgment on the merits of the claim that the defendant was the wrong party to sue for the fee, which he raised in his motion for summary judgment, except to note that it was not raised as one of the "good defenses" in the motion to transfer.

[9] We do not mean to suggest that the plaintiff will be entitled to the full requested amount of attorney's fees on remand. Rather, we merely find it necessary for the court to consider the plaintiff's claim in light of all the proper factors, including the policy underlying General Statutes § 52-251a and without faulting the plaintiff for his failure to pursue relief in the underlying matter.