******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# APPENDIX
## SHARAY FREEMAN *v.* A BETTER WAY WHOLESALE AUTOS, INC.*

Superior Court, Judicial District of Hartford

File No. CV-13-6045900-S

Memorandum filed May 3, 2018

*Proceedings*

Memorandum of decision on plaintiff's motion for supplemental attorney's fees and costs. *Motion granted in part.*

*Daniel S. Blinn*, for the plaintiff.

*Kenneth A. Votre*, for the defendant.

*Opinion*

HUDDLESTON, J. The plaintiff, Sharay Freeman, seeks $65,791.24 in supplemental attorney's fees and costs pursuant to the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., incurred in defending an appeal by the defendant, A Better Way Wholesale Autos, Inc. The court previously found the defendant liable under CUTPA and common-law fraud for misleading the plaintiff about the refundability of a $2500 deposit on a used car. (# 132.) The plaintiff was awarded $2500 in compensatory damages, $7500 in punitive damages, and, in a subsequent decision, $26,101.50 in attorney's fees. (# 148.) The Appellate Court affirmed the judgment, and the Supreme Court denied the defendant's petition for certification to appeal. See *Freeman* v. *A Better Way Wholesale Autos, Inc.*, 174 Conn. App. 649, 166 A.3d 857, cert. denied, 327 Conn. 927, 171 A.3d 60 (2017).

The defendant objects to the motion for supplemental attorney's fees. (# 153.) The court heard argument on the motion on April 3, 2018, and held an evidentiary hearing on April 13, 2018, at which the plaintiff's appellate attorney testified. For the reasons stated below, the court awards the plaintiff reasonable supplemental attorney's fees of $49,980.

The plaintiff's request for appellate attorney's fees is governed by General Statutes § 42-110g (d), which provides in relevant part: "In any action brought by a person under this section, the court may award, to the plaintiff, in addition to the relief provided in this section, costs and reasonable attorneys' fees based on the work reasonably performed by an attorney and not on the amount of recovery. . . ." As courts have often observed, "[t]he public policy underlying CUTPA is to encourage litigants to act as private attorneys general and to engage in bringing actions that have as their basis unfair or deceptive trade practices. . . . In order to encourage attorneys to accept and litigate CUTPA cases, the legislature has provided for the award of attorney's fees and costs." (Citation omitted; internal quotation marks omitted.) *Jacques All Trades Corp.* v. *Brown*, 42 Conn. App. 124, 130–31, 679 A.2d 27 (1996), aff'd, 240 Conn. 654, 692 A.2d 809 (1997).

Although § 42-110g (d) does not expressly state that attorney's fees may be awarded for appellate work, Connecticut's courts have consistently construed both contractual and statutory provisions for attorney's fees to encompass appellate attorney's fees unless the relevant language clearly indicates otherwise. See *Total Recycling Services of Connecticut, Inc.* v. *Connecticut Oil Recycling Services, LLC*, 308 Conn. 312, 333–38, 63 A.3d 896 (2013); id., 337 ("[w]e . . . will construe an attorney's fee provision that is silent with respect to appellate attorney's fees as encompassing such fees in

the absence of contractual language to the contrary"); *Gagne* v. *Vaccaro*, 118 Conn. App. 367, 369–70, 984 A.2d 1084 (2009); id., 370–71 ("[a]lthough [General Statutes] § 52-249 . . . does not specifically provide for appellate attorney's fees . . . we construe the provision for attorney's fees in § 52-249 as extending to attorney's fees incurred on appeal as well as at the trial level" [citations omitted; internal quotation marks omitted]); *Crowther* v. *Gerber Garment Technology, Inc.*, 8 Conn. App. 254, 271–72, 513 A.2d 144 (1986) (allowing appellate attorney's fees under General Statutes § 31-72 in civil action to collect wages).

Whether any attorney's fees should be awarded in a CUTPA case is a matter of discretion for the trial judge. *Steiger* v. *J. S. Builders, Inc.*, 39 Conn. App. 32, 36, 663 A.2d 432 (1995). "A court has few duties of a more delicate nature than that of fixing counsel fees." (Internal quotation marks omitted.) *Krack* v. *Action Motors Corp.*, 87 Conn. App. 687, 694, 867 A.2d 86, cert. denied, 273 Conn. 926, 871 A.2d 1031 (2005).

After the trial, this court determined that an award of attorney's fees was warranted in this case. The defendant now argues that it would be unduly punitive to award *any* additional fees for the appeal.

The court disagrees. CUTPA's attorney's fee provision is intended to enable private parties to obtain counsel to enforce the statutory prohibition on unfair trade practices. That purpose could be thwarted if fees are not awarded for the successful defense of a CUTPA judgment on appeal. In consumer cases under CUTPA, there is often an imbalance of resources between the consumer plaintiff and the business defendant. If statutory fees were not available to such a plaintiff for an appeal, the defendant could exhaust the plaintiff's resources and force the plaintiff to abandon or severely compromise a meritorious claim. The court will therefore award reasonable supplemental attorney's fees for the appeal and for this fee proceeding.

The plaintiff was represented at trial by Daniel S. Blinn and on appeal by Blinn and Richard F. Wareing. In an affidavit, Blinn attested that he does not handle appellate work on a regular basis, and his two lawyer office lacks the resources to handle all the appeals arising from judgments obtained against this defendant. Blinn therefore recommended that the plaintiff engage Wareing, an experienced appellate advocate with whom Blinn had previously worked, as cocounsel with primary responsibility for the appeal. Wareing agreed that he would be paid for his services only if the plaintiff prevailed on appeal and that his fees would be limited to the amount, if any, awarded by the court after the appeal.

Both Blinn and Wareing submitted affidavits and billing records in support of the motion for supplemental

attorney's fees. At the initial hearing on the motion, the defendant did not object to the court's consideration of Blinn's affidavit and billing record but did object to Wareing's affidavit as hearsay. The court subsequently held a hearing at which Wareing testified and was subjected to cross-examination. His billing record was submitted as an exhibit at the hearing.

Although the defendant does not argue that the plaintiff unreasonably engaged appellate counsel, the defendant does challenge the amount requested. More specifically, it argues that (1) Wareing's requested hourly rate is too high, (2) the amount requested is excessive and unreasonable in light of the actual damages of $10,000, (3) the plaintiff should not receive attorney's fees for her opposition to the petition for certification, and (4) some of the billing entries are questionable. Before deciding these specific claims, the court addresses the standard that applies to awards of attorney's fees under CUTPA.

"[T]he initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." (Internal quotation marks omitted.) *Carrillo* v. *Goldberg*, 141 Conn. App. 299, 317, 61 A.3d 1164 (2013). "The courts may then adjust this lodestar calculation by other factors [outlined in *Johnson* v. *Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)]." (Internal quotation marks omitted.) *Carrillo* v. *Goldberg*, supra, 317; see *Steiger* v. *J. S. Builders, Inc.*, supra, 39 Conn. App. 35–39 (adopting *Johnson* analysis). "The *Johnson* court set forth twelve factors for determining the reasonableness of an attorney's fee award, and they are: the time and labor required; the novelty and difficulty of the questions; the skill requisite to perform the legal services properly; the preclusion of other employment by the attorney due to acceptance of the case; the customary fee; whether the fee is fixed or contingent; time limitations imposed by the client or the circumstances; the amount involved and the results obtained; the experience, reputation, and ability of the attorneys; the 'undesirability' of the case; the nature and length of the professional relationship with the client; and awards in similar cases." *Laudano* v. *New Haven*, 58 Conn. App. 819, 823 n.9, 755 A.2d 907 (2000). Although courts often describe the *Johnson-Steiger* factors as the basis for an "adjustment" of the lodestar, as a practical matter, most of these factors "usually are subsumed within the initial calculation of hours reasonably expended, at a reasonable hourly rate." *Hensley* v. *Eckerhart*, 461 U.S. 424, 434 n.9, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983).

In applying the *Johnson-Steiger* factors, the court should bear in mind the public policy underlying the statute that provides for the fee award at issue. See *Costanzo* v. *Mulshine*, 94 Conn. App. 655, 664–65, 893

A.2d 905, cert. denied, 279 Conn. 911, 902 A.2d 1070 (2006). A trial court abuses its discretion by "seizing from the full panoply of relevant factors merely one factor to the exclusion and disregard of the others." *Rodriguez* v. *Ancona*, 88 Conn. App. 193, 203, 868 A.2d 807 (2005).

Turning to the task of determining reasonable supplemental fees in this case, the court considers the evidence of Blinn's affidavit and billing records, and Wareing's testimony and billing records. The court also takes judicial notice of the appellate pleadings.[1] This includes motions, briefs, appendices, and the petition for certification and opposition thereto, which this court has fully reviewed to determine the reasonableness of the time expended in discrete tasks. The court also considers its own knowledge of appellate practice and procedure and fees customarily charged in Connecticut.

The first step in determining reasonable attorney's fees is deciding upon a reasonable hourly rate for the lawyers involved. Blinn requests an hourly rate of $375, the rate the court previously approved for his work. The defendant does not challenge this rate. The court finds that $375 is an appropriate hourly rate for Blinn, an experienced and skillful consumer advocate, for the reasons stated in the court's decision of March 18, 2016.

Wareing also requests an hourly rate of $375. If the only factors to be considered were his skill, experience, and reputation, that rate would be warranted. He has considerable appellate experience and is respected as an appellate lawyer, reflected in the fact that he has served on the faculty of the Connecticut Bar Association's Appellate Advocacy Institute. The hourly rate of $375 is within the range customarily charged by attorneys in Connecticut and is what Wareing charged at a previous firm, which he left in 2013. But Wareing testified that his usual hourly rate now is $225 to $275, depending on the nature of the matter and the relationship with the client. He explained, on cross-examination, that he and his current partners made a business decision to charge fees that were lower than rates they had previously charged at another firm. Their purpose in doing so was to avoid disputes with clients over fees, to avoid having to write off time to satisfy clients, and to avoid having to "chase" clients for fees. He testified that with the lower rates, his firm now requires a substantial retainer, and most clients pay their bills within thirty to sixty days.

From Wareing's testimony, the court infers that although higher hourly rates may be charged in the marketplace, such higher hourly rates also lead to disputes with clients about bills and result in some bills being reduced to maintain client relationships. The court concludes that the fees Wareing currently charges to clients—from $225 to $275 an hour—represent a

reasonable range of hourly rates for his services in this case.

The plaintiff argues that Wareing should receive $375 per hour because his fee in this case was both contingent and likely to be delayed. In Wareing's usual practice, at the lower rates he now charges, his fees are generally fixed, not contingent, and he requires both a substantial retainer and prompt payment. In this case, he agreed that he would look solely to an award of statutory attorney's fees. In so doing, he assumed the risk of losing on appeal, the risk of the court denying or reducing his requested fees, and the risk that any fees awarded might be long delayed. The court agrees that the contingent nature of his fees and the delay in recovering them warrant consideration, but it is not persuaded that those factors justify an hourly rate that is $100 to $150 more than the rate he charges to paying clients. In light of Wareing's testimony and the court's own knowledge of the wide range of reasonable rates and billing arrangements in this marketplace, the court concludes that an hourly rate of $275, which is at the upper end of Wareing's current rates, is a reasonable rate for his work on the appeal in this case.

Both Blinn and Wareing have paralegals who performed some tasks related to the appeal. The plaintiff is requesting the rate of $125 per hour for Blinn's paralegal, Lori Miner, the rate of $100 per hour for Wareing's paralegal, Josephine Salafia, who has twenty years experience as a litigation paralegal, and the rate of $40 per hour for Traci Parent, a legal assistant at Wareing's firm since September, 2014. The court finds these rates to be reasonable based on Blinn's affidavit, Wareing's testimony, and the court's own knowledge of fees customarily charged for paralegals and legal assistants. The defendant has not contested the rates sought for these individuals, but has contended that some of their time was not reasonably billed. The court will address those issues in relation to the various tasks challenged.

The court next examines the time reasonably spent on the appeal. The defendant does not challenge any of the time entries by Blinn. Blinn exercised billing judgment to delete charges for duplicative services, such as his attendance at oral argument. The charges he did request are for tasks that were reasonable. He attended the preargument conference, kept the plaintiff apprised of the status of the appeal, consulted with Wareing briefly as issues arose during the appeal, reviewed Wareing's drafts of motions, the brief, and objections, mooted Wareing for oral argument, and prepared and presented the pending attorney's fee motion. Based on his fee affidavit and time records, the court concludes that Blinn reasonably spent 24.5 hours on the appeal and the fee motion. In addition, according to Wareing's testimony, both Wareing and Blinn spent five hours preparing for and attending the evidentiary

fee hearing on April 13, 2018. The court finds that the lodestar for Blinn's attorney's fees is $11,062.50, based on 29.5 hours at $375 per hour.

The defendant argues that the time spent by Wareing in motion practice, in preparing the brief, and in preparing for argument was excessive. Wareing's billing record indicates that he spent eleven hours on motions and objections related to the defendant's failure to file its brief on time, 7.5 hours reviewing the trial court record, including the transcript and the court's decisions, 86.3 hours in legal research and writing the appellate brief, 22.8 hours preparing for and attending oral argument, 15.7 hours responding to the defendant's petition for certification, and 2.8 hours preparing his fee affidavit. In addition, he spent five hours preparing for and attending the hearing on this fee motion. His total time spent on the appeal and fee motion equaled 151.1 hours.

The time spent on the appellate motion practice requires some context. The defendant's brief was due on April 20, 2016. On that date, the defendant's attorney moved for an extension of seven days, to April 27, 2016, which was granted. That deadline came and went. The plaintiff's attorneys noted that the defendant's brief had not been filed. On July 7, 2016, the plaintiff moved to dismiss the appeal for failure to file a timely brief. In response, the defendant's counsel filed two improper motions to extend time, which were summarily denied by the appellate clerk, and subsequently filed the proper motion, a motion for leave to file a late brief.[2] The plaintiff's attorneys objected to the motion. The court issued a nisi order, stating that the appeal would be dismissed if the defendant's brief was not filed by August 2, 2016. On August 2, 2016, the defendant filed a brief and appendix that was rejected by the appellate clerk for failure to number the pages of the appendix and failure to include a judgment file. The defendant then filed a motion for extension of time to file a corrected brief. The appellate clerk issued a second nisi order, stating that the appeal would be dismissed unless a complying appellant's brief and appendix were filed by August 17, 2016. The defendant filed a complying brief and appendix on August 16, 2016.

Each of the defendant's failures to comply with court rules and deadlines required the plaintiff's attorneys to consider the defendant's procedural misstep and decide whether and how to respond to it. The plaintiff's judgment was automatically stayed by Practice Book § 61-11 (a), and she could not enforce the judgment until the appeal was concluded. The plaintiff's attorneys reasonably moved to dismiss the appeal when the defendant's brief was more than two months late. Each motion subsequently filed by the defendant in an attempt to cure previous defects required the plaintiff's attorneys to read the motion and consider whether to

object. The plaintiff's attorneys reasonably decided to object to the defendant's motion to file a late brief to rebut the defendant's assertion, in that motion, that the lapse was caused by a departing associate who had failed to calendar the deadline correctly. As the plaintiff pointed out in the objection, the defendant's lead attorney had himself signed the motion for extension of time that requested the April 27 due date. The plaintiff also argued that the defendant's excuse represented gross negligence, not good cause for relief, because the defendant had offered the same excuse for missed deadlines in at least five other cases in 2016. Although ultimately unsuccessful, these were not frivolous arguments, and they had the effect of moving the appeal forward.

In total, Wareing spent eleven hours drafting the various motions and objections related to the defendant's failure to file a timely brief. For the objection to the motion to file a late brief, Blinn's paralegal, Miner, also spent an hour on a footnote that documented the five other recent cases in which the defendant had attributed a missed deadline to a departing associate's failure to calendar matters properly. The motion to dismiss is only two pages long and is not complicated. Similarly, the objection to the motion to file a late brief is only three pages long, and the footnote described above is a substantial portion of it. The court will reduce Wareing's time on this motion practice from eleven hours to four hours and Miner's time from one hour to a half hour for drafting the footnote.

The time Wareing spent reviewing the trial court record was reasonable, and the defendant does not argue otherwise. The defendant does argue that the time spent drafting the brief was unreasonable, claiming that no one would reasonably spend the time Wareing spent on the brief for a case with damages of only $10,000. The court credits Wareing's testimony to the contrary. He testified that some of his commercial clients are willing to spend substantial sums on appeals, even when the amount of money at issue is small, if the legal principle at issue is important to them. The court further observes that the defendant in this case was willing to incur its own attorney's fees and to risk that it would be required to pay the plaintiff's attorneys as well, even though the amount at issue when the defendant filed its appeal was only $10,000.[3]

Wareing credibly testified that the time required to research and draft the appellate brief was driven largely by the fact that the defendant raised eight issues on appeal and claimed that there was "no evidence" to support the trial court's findings. Wareing had to analyze each of those eight issues, determine the appropriate standard of appellate review, research the relevant law, review the trial record to marshal the evidence that supported the court's findings, and provide a legal analysis of each issue. As Wareing testified,

"the more arguments an appellant makes, the more work the appellee has to do to swat back those arguments."[4]

Moreover, our appellate courts frequently remind appellate litigators that "[w]riting a compelling legal argument is a painstaking, time-consuming task. Good legal analysis is premised on knowing the controlling rules of law. An effective appellate advocate must apply the rules of law to the facts at hand by applying or distinguishing existing legal precedent. . . . To write a good brief and to comply with the rules of practice, counsel must state the rules of law, [and] provide citations to legal authority that support the claims made . . . ." (Internal quotation marks omitted.) *State* v. *Buhl*, 321 Conn. 688, 729, 138 A.3d 868 (2016); see also *Desmond* v. *Yale-New Haven Hospital, Inc.*, 181 Conn. App. 201, 212–13, 185 A.3d 665 (quoting *Buhl*), cert. denied, 330 Conn. 902, 191 A.3d 1001 (2018). It was not inherently excessive to spend 86.3 hours performing the "painstaking, time-consuming task" of writing persuasive arguments for the eight appellate issues raised by the defendant. It averaged only 10.8 hours per issue.

Although the court does not find the time claimed by Wareing to be inherently excessive, there is nevertheless a discrepancy between Wareing's testimony and his time records. Wareing testified that he spent "just north of" two hours per page in drafting the brief. Including the counterstatement of the issues and the body of the brief, the brief was just over thirty-four pages. Based on Wareing's testimony, writing the brief would require slightly more than sixty-eight hours, but Wareing's billing records indicate that he actually spent 86.3 hours working on the brief. On cross-examination, he was asked if he would be surprised if his records showed that he spent 100 hours on the brief, and he said that he would be very surprised. The court infers from Wareing's testimony that the time spent on the brief was somewhat greater than he remembered and somewhat greater than he would ordinarily expect to spend. The court further notes that some of his time entries are vague. Taking into account these facts, the court finds that Wareing reasonably spent eighty hours preparing the brief.

Oral argument in the appeal was originally scheduled for March 20, 2017. Between March 10 and March 17, Wareing reasonably spent about ten hours preparing for oral argument, including time spent with Blinn in mooting.[5] Two unforeseen circumstances then increased the time attributed to oral argument. First, the Appellate Court issued an order directing the parties to be prepared to address whether the court should dismiss the portion of the appeal challenging the award of attorney's fees because the plaintiff had not amended his appeal, which was filed before the attorney's fee decision was issued by this court, to include an appeal

of the attorney's fee decision. This was an issue that all counsel in the case had overlooked, and Wareing spent about three hours on March 19 preparing to address it. Then, on March 20, 2017, while the parties were waiting to present their arguments, the Appellate Court's recording system malfunctioned. The attorneys had to wait while attempts were made to get it working, but eventually the argument was rescheduled for March 28, 2017. Wareing spent 2.7 hours on March 27, refreshing his preparation, and 3.6 hours on March 28, reviewing his notes, attending court, and presenting his argument. The defendant has objected to the time spent on March 27 and 28, claiming that Wareing unreasonably spent an additional 6.3 hours preparing for an argument that he had been prepared to give a week earlier. The court disagrees. The time spent on March 27 to refresh his preparation was reasonable, and the time spent on March 28 was primarily spent attending court, waiting for the case to be called, and presenting the argument. In the circumstances of this case, where an additional issue was raised by the court and where the argument had to be rescheduled through no fault of any party, the time spent preparing for oral argument was reasonable.

After the Appellate Court issued its decision, affirming the judgment on the merits and dismissing the appeal as to the attorney's fee issue, the defendant filed a petition for certification to the Supreme Court. Wareing spent 15.7 hours preparing an opposition to the petition. The defendant did not challenge the amount of time spent opposing the petition, but it argued that time spent on the petition could not properly be considered because the Supreme Court had not decided the petition when the plaintiff filed the motion for supplemental fees. That argument is unavailing now because the Supreme Court denied certification while the fee motion was pending. The court finds that the time spent drafting the opposition to the petition was reasonable.

Finally, Wareing spent 2.8 hours preparing his fee affidavit. In addition, he spent five hours on April 13, 2018, preparing for and attending the hearing on the fee motion. The defendant has not challenged that time, and the court finds that it was reasonable.

Adding up all the components of the appellate process, the court finds that Wareing reasonably expended 137.8 hours in defending the judgment on appeal and pursuing this motion. The lodestar for Wareing is calculated to be $37,895.

Paralegals in Blinn's office and in Wareing's office assisted in posttrial work, including the appeal and the fee motion. Blinn's paralegal, Miner, drafted a bill of costs, part of the objection to the motion for leave to file a late brief, and portions of the fee motion. Such tasks are reasonably done by a paralegal. After excluding a half hour for the footnote, the court finds that

Miner reasonably spent 4.5 hours on tasks requiring a paralegal's experience and knowledge. Her lodestar figure is $562.50.

Wareing claims $200 in fees for two hours spent by his paralegal, Salafia, who retrieved and analyzed pleadings filed in the Appellate Court and drafted correspondence to the court regarding oral argument dates. The defendant has not challenged any of Salafia's time. The court finds that Salafia's lodestar is $200.

Wareing also claims $260 for 6.5 hours spent by his legal assistant, Traci Parent, in preparing the appellee's appendix. The defendant challenges this time as spent on ministerial tasks. The court disagrees. Practice Book §§ 67-2, 67-4, 67-5 and 67-8 prescribe specific standards for the format and contents of an appendix. Failure to follow the rules can result in rejection of the appendix.[6] Under Practice Book § 67-8 (c), the appellee is required to analyze the appellant's appendix and to provide any required documents that the appellant has omitted from its appendix. The appellee may also include "any other portions of the proceedings below that the appellee deems necessary for the proper presentation of the issues on appeal." Practice Book § 67-8 (c). Wareing testified that the defendant's appendix did not include any of the transcripts and other portions of the record that Wareing deemed necessary to counter the defendant's argument that no evidence supported the trial court's judgment. However, Practice Book § 67-8 (b) (2) cautions that "[t]o reproduce a full transcript or lengthy exhibit when an excerpt would suffice is a misuse of an appendix." The preparation of an appendix thus requires the exercise of judgment to include enough, but not too much, of the trial court record. It is not unreasonable to assign the task of preparing the appendix to a legal assistant working under the supervision and review of the appellate attorney.[7] The court finds that Parent's lodestar is $260.

Combining the lodestars for all the timekeepers, the total lodestar for the appeal and this fee motion is $49,980. The court now considers the *Johnson-Steiger* factors to determine whether that lodestar should be adjusted.

The court has already addressed, in its analysis of the reasonable lodestar, several of the *Johnson-Steiger* factors, including the time and labor required, the customary fee for similar work in the community, whether the fee is fixed or contingent, and the experience, reputation, and ability of the attorneys. No adjustment is required because these factors are subsumed within the lodestar. See *Hensley* v. *Eckerhart*, supra, 461 U.S. 434 n.9.

As to the novelty or difficulty of the questions, Wareing testified that the appeal was "medium" in complexity. The defendant argues that the court previously

found that the issues presented at trial were not novel or difficult, arguing that the appeal is no more complicated than the trial. Wareing testified, however, that the appeal presented challenges both because of the number of issues presented and because of inconsistencies in the defendant's appellate arguments that he had to address. No lodestar adjustment is needed for an appeal of average complexity.

As to the skill required to perform the legal service properly, the court finds that appellate practice requires knowledge of and attention to appellate rules and procedure in addition to knowledge of the substantive areas of law involved. Blinn appropriately sought to cocounsel with Wareing because Wareing had more extensive appellate experience than Blinn and because appeals are time-consuming endeavors. No adjustment is needed for this factor because it, too, is subsumed within the lodestar analysis.

There was little evidence on the preclusion of other employment, other than the obvious fact that there are only so many hours in a day and time spent on one client's case is time not spent on other clients' cases. Nor was there evidence of any time limitations imposed by the client or the circumstances. As to the nature and length of the professional relationship with the client, there was no evidence that Blinn had represented the plaintiff in other cases. Wareing testified that he had never met the plaintiff, but communicated with her through Blinn. No adjustment is warranted on the basis of these factors.

The defendant focuses on "the amount involved and the results obtained," arguing that the fees requested are so disproportionate to the damages awarded that a substantial reduction is required. The defendant has made this argument unsuccessfully earlier in this case and in other cases. See *Franco* v. *A Better Way Wholesale Autos*, *Inc.*, Civil Action No. 3:14-cv-00422 (VLB), 2016 WL 3064051, *3 (D. Conn. May 31, 2016) ("Defendants also argue that the attorney's fees are disproportionate to the damages awarded. This objection lacks an arguable basis in law"), aff'd, 690 Fed. Appx. 741 (2d Cir. 2017). Other than a perfunctory citation to *Steiger*, the defendant fails to cite any authority in support of its claim that the fee award should be limited in proportion to the award of damages. The failure to brief an argument adequately is, in itself, a reason to reject the argument. See *State* v. *Buhl*, supra, 321 Conn. 724–29 (discussing qualities of adequate briefing); see also *A Better Way Wholesale Autos*, *Inc.* v. *Rodriguez*, 176 Conn. App. 392, 407, 169 A.3d 292 (2017) (declining to review attorney's fee issue because of inadequate briefing), cert. denied, 327 Conn. 992, 175 A.3d 1248 (2018).

The defendant ignores the extensive body of law governing attorney's fee awards. First, it fails to address

the text of CUTPA, which expressly provides that a fee award is to be "based on the work reasonably performed by an attorney and not on the amount of recovery." General Statutes § 42-110g (d). It also fails to address the many cases in which our appellate courts have rejected a proportionality argument. For instance, in *Simms* v. *Chaisson*, 277 Conn. 319, 890 A.2d 548 (2006), the Supreme Court rejected a proportionality argument and affirmed an attorney's fee award of $65,286.80 pursuant to General Statutes § 52-571c[8] in a case where two plaintiffs had been awarded only nominal damages of $10 each under that statute. In that case, which involved racial intimidation by the defendants, the Supreme Court determined that "there is a strong public policy reason for giving courts discretion to award substantial attorney's fees when the plaintiff's claim for damages and recovery is not large. Courts have recognized that the cumulative effect of small violations of one's civil rights may not be minimal to society as a whole." Id., 334. This principle has been applied to support substantial awards of attorney's fees under other statutes to vindicate the purpose underlying the particular statute. For instance, in *Costanzo* v. *Mulshine*, supra, 94 Conn. App. 663–64, the Appellate Court held that the trial court had abused its discretion in awarding only $1500 in attorney's fees pursuant to General Statutes § 52-251a without determining whether the requested fees of $15,000 were reasonable. The trial court had reduced the requested fees in part because the damages awarded were only $1650. The Appellate Court concluded that the court had erred in its "consideration of the disputed amount as a gauge for the proper amount of attorney's fees"; id., 663; and that it had failed to consider the policy underlying § 52-251a, which allows a prevailing plaintiff to recover attorney's fees if a defendant transfers a matter from the small claims division to the regular civil docket in Superior Court. The Appellate Court commented that the attorney's fee provision served to deter defendants from "turning a relatively clear-cut case into a pitched legal battle"; (internal quotation marks omitted) id., 665; *and* to "reward those attorneys who represent small claims plaintiffs even though the monetary value of the representation may be relatively insignificant for the time and effort required." Id., 665 n.7. In *Krack* v. *Action Motors Corp.*, supra, 87 Conn. App. 689, the Appellate Court affirmed an award of attorney's fees under § 52-251a that was ten times the amount originally in dispute in the small claims division. The rationale applies equally to CUTPA cases. The availability of statutory attorney's fees under CUTPA serves both to deter unfair trade practices and to compensate attorneys for taking on small cases to enforce the public policy of protecting consumers from unfair and deceptive conduct.

Moreover, the court considers the "amount at issue" in conjunction with the "results obtained." The plaintiff

prevailed on all issues on appeal and successfully opposed a further appeal to the Supreme Court. The court also considers the economic "undesirability" of a case involving such a small monetary claim. Few lawyers are willing to take on such cases because payment for them is uncertain and is likely to be long delayed. The court finds that the success achieved and the economic undesirability of the case counterbalance the factor of the "amount involved." No adjustment to the lodestar is warranted on these factors.

The parties did not provide evidence about awards in similar cases. The court observes that in a somewhat similar case, *Creative Masonry & Chimney, LLC* v. *Johnson*, Superior Court, judicial district of New Britain, Docket No. CV-09-5011943, 2013 WL 6131685 (October 23, 2013) (*Swienton, J.*), the court awarded appellate attorney's fees of $46,888,48. In the proceedings leading up to that decision, a jury had awarded the plaintiff $7700 in compensatory damages under CUTPA, and the trial court had awarded $23,100 in punitive damages and $56,380 in trial attorney's fees, as well as costs and prejudgment interest. *Creative Masonry & Chimney, LLC* v. *Johnson*, 142 Conn. App. 135, 138, 64 A.3d 359, cert. denied, 309 Conn. 903, 68 A.3d 658 (2013). As in this case, the defendant in that case appealed; the Appellate Court affirmed; and the Supreme Court denied certification. To the extent that awards in similar cases are a factor, no adjustment to the lodestar is warranted.

Finally, the court addresses the plaintiff's request for costs. The plaintiff seeks $393.74 for Blinn, consisting of travel expenses for the preargument conference and transcript costs, and $337.50 for Wareing for copying the appeal brief and appendix. Costs on appeal are governed by General Statutes § 52-257 (d) and Practice Book § 71-2, which requires a bill of costs to be filed with the appellate clerk. The Appellate Court has held that nontaxable costs are not available under CUTPA. See *Taylor* v. *King*, 121 Conn. App. 105, 133–35, 994 A.2d 330 (2010) (no statutory authority for expert witness fees under CUTPA other than fees taxable under General Statutes § 52-260); *Metcoff* v. *NCT Group, Inc.*, 52 Conn. Supp. 363, 378–79, 50 A.3d 1004 (2011) (nontaxable costs not available under CUTPA), aff'd, 137 Conn. App. 578, 49 A.3d 282, cert. denied, 307 Conn. 924, 55 A.3d 566 (2012). Several trial court decisions have reasonably questioned whether CUTPA should be construed, as a remedial statute, to include nontaxable costs. See *Metcoff* v. *NCT Group, Inc.*, supra, 379 (collecting cases). This court is nevertheless bound by the decisions of the Appellate Court.

In summary, the plaintiff is awarded attorney's fees of $49,980 for the time reasonably expended by her attorneys on appeal and on the fee motion. The request for expenses is denied.

\* Affirmed. *Freeman* v. *A Better Way Wholesale Autos, Inc.*, 191 Conn.

App. , A.3d (2019).

[1] At the hearing on April 13, 2018, the court advised the parties that it intended to take judicial notice of the appellate pleadings. The defendant objected on the ground of relevance, asserting that consideration of the appellate briefs would lead to this court's consideration of the merits of the arguments made to the Appellate Court. The court overruled the defendant's objection. In deciding an attorney's fee motion, the court is required to consider the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly, among other factors. The pleadings in the Appellate Court and Supreme Court are directly relevant to those factors.

[2] Practice Book § 66-1 governs appellate motions for extension of time. Practice Book § 66-1 (c) authorizes the appellate clerk to grant or deny motions for extension of time "promptly upon their filing." Practice Book § 66-1 (e) provides in relevant part that "[n]o motion under this rule shall be granted unless it is filed before the time sought to be extended by such motion has expired." If a deadline has been missed, as was the case here, Practice Book § 60-2 (5) authorizes the court having jurisdiction over the appeal to grant a motion for leave to file a late brief "for good cause shown."

[3] The court had not yet heard the attorney's fee motion when the defendant filed its appeal on October 30, 2015.

[4] Both state and federal appellate courts have frequently advised appellants to limit the number of issues raised on appeal to one, two, or three issues. See, e.g., *State* v. *Pelletier*, 209 Conn. 564, 566–67, 552 A.2d 805 (1989) (a "torrent of claimed error . . . serves neither the ends of justice nor the defendant's own purposes as possibly meritorious issues are obscured by the sheer number of claims"); *Mozell* v. *Commissioner of Correction*, 87 Conn. App. 560, 563, 867 A.2d 51 ("[e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible" [internal quotation marks omitted]), cert. denied, 273 Conn. 934, 875 A.2d 543 (2005); see also *Jones* v. *Barnes*, 463 U.S. 745, 752, 103 S. Ct. 3308, 77 L. Ed. 2d 987 (1983) ("multiplying assignments of error will dilute and weaken a good case and will not save a bad one" [internal quotation marks omitted]).

[5] A "mooting," or "moot court," is a "practice session for an appellate argument in which a lawyer presents the argument to other lawyers, who first act as judges by asking questions and who later provide criticism on the argument." Black's Law Dictionary (8th Ed. 2004) p. 1029. "[A]n appellate advocate who does not participate in a moot court before oral argument is like an actor who skips dress rehearsal or a quarterback who sits out the preseason." (Internal quotation marks omitted.) D. Knibb, Federal Court of Appeals Manual (6th Ed. 2019) § 33:11.

[6] In fact, the defendant's brief and appendix were rejected because the defendant's appendix was not properly paginated and did not include the judgment file. See Practice Book §§ 67-2 (c) and 67-8 (b) (1).

[7] Wareing reasonably spent 1.6 hours reviewing the appendix. This was included in the court's analysis of the time spent preparing the brief.

[8] Section 52-571c (a) authorizes a civil action for damages resulting from intimidation based on bigotry or bias. Subsection (b) of that section requires the court to award treble damages and permits it to award, in its discretion, a reasonable attorney's fee.